IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JARROD LOWREY,

      Plaintiff,

    v.                                    Civ. No. 23-372 JCH/JFR

DAVID PORTIS et al.,

      Defendants.

MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court by Order of Reference[1] in accordance with 28

U.S.C. §§ 636(b)(1)(B), (b)(3), and *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 489

(10th Cir. 1990).  Doc. 92.  On April 24, 2024, Defendants David Portis, Phillip Gallegos, Nick

Army, Ben Parker, John Christopher Miles, Johnathan Hickerson, and Marie Posey filed their

*Motion to Dismiss Counts 1, and 10 through 14* ("Motion"), pursuant to Federal Rules of Civil

Procedure 12(b)(6) and (c).  Doc. 114.  Plaintiff responded in opposition on May 8, 2024, and

Defendants replied on May 22, 2024.  Docs. 128, 132.  The Motion is ripe for decision.  Doc.

133.  Having considered the arguments of the parties and being otherwise sufficiently advised in

the premises, the Court recommends that the presiding judge **GRANT** the Motion, and thereby

**DISMISS** Counts 1 and 10-14 of Plaintiff's Complaint.[2]

---

[1]      By an Order of Reference filed March 7, 2024 (Doc. 92), the presiding judge referred this matter to the undersigned to conduct hearings as warranted and to perform any legal analysis required to recommend an ultimate disposition of the case.

[2]      References to the "Complaint" are to Plaintiff's Amended Civil Rights Complaint (Doc. 42), which is the operative Complaint in this matter.

# I. BACKGROUND

On August 28, 2023, Plaintiff filed his Complaint against the above-named Defendants and Judge Cheryl H. Johnston.[3]  Doc. 1.  Therein, Plaintiff makes myriad allegations against Defendants, based primarily on his interactions with law enforcement in the course of their involvement with Plaintiff, his minor child, and his minor child's mother, J.R.  *See generally* Doc. 42.  Plaintiff claims various violations of the Fourth and Fourteenth Amendments to the United States Constitution, the New Mexico Constitution, federal and state statutes, and the Rio Rancho Police Department ("RRPD") Standards and Procedures Manual. *Id.*  Defendants argue in their Motion[4] that Counts 1 and 10-14 of Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(6), or in the alternative, Rule 12(c) because "Plaintiff has failed to state any valid claims within these Counts."  Doc. 114 at 2-3.

# II. ANALYSIS

## A.      Legal Standard

 Rule 12(b)(6) permits a party to raise by motion the defense of "failure to state a claim upon which relief can be granted."  Rule 12(c) permits a party to "move for judgment on the pleadings" provided the motion is filed following the closure of pleadings "but early enough not to delay trial."  The Court evaluates motions brought under Rules 12(b)(6) and (c) under the same standard.  *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).  In deciding the motion, the Court accepts the factual allegations in the complaint as true and views them in the light most favorable to the plaintiff. *Bell Atlantic Corp. v. Twombly*, 550

---

[3]      Judge Johnston has been dismissed from this litigation.  Doc. 54.

[4]      While Defendants proceed together in their Motion, *see* Doc. 114 at 1, the Counts at issue pertain only to Defendants Hickerson (Count 1), Parker (Counts 10 and 11), Miles (Counts 12 and 13), and Posey (Count 14).  Doc. 42 at 3, 14-15, 19, 24.  Therefore, the Court's PFRD pertains only to those Defendants.

U.S. 544, 555-56 (2007).  While the facts in the complaint need not be detailed, they must be sufficient to allow the Court to draw "the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Id.* (internal quotation marks and citation omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration, internal quotation marks and citation omitted).

In its analysis below, the Court considers only the pleadings, and has not considered extraneous material.  *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215-16 (10th Cir. 2007) (discussing the Court's duty to constrain itself to considering only the pleadings in deciding a motion to dismiss under Rule 12(b)(6) and the circumstances under which it is permissible to consider matters outside the pleadings).

**B.     Plaintiff's Complaint**

Plaintiff is proceeding pro se, so the Court remains cognizant of its duty to liberally construe his pleadings.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Below, the Court sets out the allegations in each Count of Plaintiff's Complaint that is at issue here.  Material to all Counts is 42 U.S.C. § 1983, the vehicle under which Plaintiff brings his constitutional claims.  Doc. 42 at 2; *see Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016) (observing that "§ 1983 is a remedial vehicle for raising claims based on the violation of constitutional rights.").  The Court addresses the other federal and state statutes under which Plaintiff brings his claims as they become pertinent to its analysis below.

      1.     <u>Count 1</u>

In Count 1, brought against Defendant Hickerson, Plaintiff alleges that Defendant Hickerson "was dispatched to a welfare check of Plaintiff's minor child" but never located the child.  Doc. 42 at 3.  Plaintiff further alleges that Defendant Hickerson "called Plaintiff and accused him of wasting his time" and "said he was driving to the child's mother's home to file a stalking and harassment report against Plaintiff."  *Id.*  According to Plaintiff, Defendant Hickerson "never located the child and thus never completed the welfare check he was dispatched to perform" which was a breach of protocol under the Rio Rancho Police Department ("RRPD") Standards and Procedures Manual.  *Id.*  Plaintiff alleges unequal treatment in that, in his view, Defendant Hickerson "treated Plaintiff unfairly and . . . he gave preferential treatment to the child's mother over Plaintiff for no clear reason."  *Id.*  Plaintiff claims this conduct is a violation of the Fourteenth Amendment's Equal Protection Clause; the New Mexico Constitution's guarantees of inherent rights (art. II, § 4), the rights of the accused (art. II, § 14), and equal protection (art. II, § 18), and the separation of powers (art. III, § 1); the New Mexico Human Rights Act ("NMHRA"), N.M. Stat. Ann. § 28-1-1 (2000) *et seq.*; the New Mexico Civil Rights Act ("NMCRA"), N.M. Stat. Ann. § 41-4A-1 (2021) *et seq.*; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; and the RRPD Standards and Procedures Manual.  Doc. 42 at 3.

      2.     <u>Counts 10 and 11</u>

In Counts 10 and 11, brought against Defendant Parker, Plaintiff alleges that Defendant Parker, "showed a clear bias against charging" J.R. during an investigation into Plaintiff's child's exposure to drugs and alcohol in J.R.'s home.  Doc. 42 at 15-16.  Plaintiff further alleges that Defendant Parker abandoned this investigation after J.R. and her father made statements that

"Plaintiff had been inappropriate with her daughter 6-7 years ago." *Id.* at 16.  According to Plaintiff, Defendant Parker shifted his focus to "the false allegation that Plaintiff had somehow touched a 6[-]year[-]old girl inappropriately." *Id.*  Plaintiff claims that Defendant Parker "lied multiple times in his report about making a referral to" the New Mexico Children, Youth and Families Department ("CYFD"). *Id.*  Plaintiff further claims that, because of this, CYFD was able to seize his child. *Id.* at 17.  Plaintiff alleges that Defendant Parker engaged in fraudulent activity by doctoring his report and covering up the "mistake of conflating two separate investigations into one." *Id.* at 17-18.  Plaintiff claims this conduct is a violation of the Fourteenth Amendment's Equal Protection Clause; amounts to malicious prosecution in violation of the Fourth Amendment; violates the inherent rights (art. II, § 4), the right to be free from unreasonable searches and seizures (art II § 10), the rights of the accused (art. II, § 14), and equal protection under the New Mexico Constitution (art. II, § 18); the NMCRA; and the RRPD Standards and Procedures Manual. *Id.* at 14-15.

C.    <u>Counts 12 and 13</u>

In Counts 12 and 13, brought against Defendant Miles, Plaintiff alleges that Defendant Miles was dispatched to assist another RRPD Officer with a call where J.R. "told the officers that her child was smoking marijuana, vape pens, stealing, trying to run away, and that there was a drug dealer coming to her house to deal drugs to her 13[-]year[-]old child." Doc. 42 at 20. According to Plaintiff, Defendant Miles did not investigate the claims of drug dealing. *Id.* Plaintiff alleges that Defendant Miles "was brought into" Defendant Parker's investigation concerning "the false allegations made by" J.R. and her daughter regarding inappropriate contact by Plaintiff. *Id.*  Plaintiff states that he "was very critical of RRPD" during an interview with Defendant Parker about RRPD's "handling of the lack of investigation into who was selling the

13[-]year[-]old child drugs." *Id.* at 20-21. Plaintiff further states that he "was unaware that he

was actually criticizing [Defendant] Parker's partner, [Defendant] Miles." *Id.* at 21. Plaintiff

claims this was Defendant Parker's "motive" to be "very biased in his investigation" into child

abuse by J.R. and "instantly turned it around on Plaintiff trying to charge him with child abuse."

*Id.* at 21.

Plaintiff alleges that Defendants Miles and Parker knew that he voiced concern about the

claims of drug dealing at J.R.'s house, which "provided motive for [Defendant] Miles[] to open a

malicious prosecution against . . . Plaintiff." *Id.* Plaintiff further alleges that Defendant Miles

allowed CYFD to access the RRPD investigation without authorization and "conspired with

CYFD to illegally seize Plaintiff's child by gunpoint without any warrant, petition or court

order" on two occasions. *Id.* Plaintiff claims that Defendants Parker and Miles, along with

another individual, "concocted a scheme" to "legitimize their sloppy investigation into Plaintiff."

*Id.* at 22. Plaintiff details a course of action whereby Defendant Parker opened a new case

number, assigned Defendant Miles to that case, and copied Defendant Parker's first report into

the new case, in a fraudulent attempt "to relieve their own liability from the lawsuit they knew

was coming by Plaintiff for the illegal seizure of his child." *Id.* at 22. According to Plaintiff,

Defendant Miles "filed a malicious criminal case against Plaintiff knowing it was unsupported

by evidence. He and [Defendant] Parker omitted evidence from their reports to absolve J[.]R[.]

of any criminal charges." *Id.* at 23. Plaintiff alleges that, during an interview with Defendants

Parker and Miles, Defendant Parker lied about how CYFD became involved in the RRPD

investigation and stated that he did not review "the case of false reports against J[.]R[.]" *Id.*

Plaintiff further alleges that Defendant Miles told him that "a 13[-]year[-]old smoking marijuana

is a 'civil matter.'" *Id.* (emphasis omitted). Plaintiff claims he told Defendants Parker and Miles

that "J[.]R[.] filed a naked picture of him which is a crime in New Mexico" and they "d[id] nothing about it." *Id.* He further claims that, while Defendant Miles told him RRPD does not engage in civil matters, Defendant Miles and another RRPD officer gave J.R. "civil legal advice." *Id.*

Plaintiff claims the foregoing conduct is a violation of the Fourteenth Amendment's Equal Protection Clause; amounts to malicious prosecution in violation of the Fourth Amendment; violates the inherent rights (art. II, § 4), the right to be free from unreasonable searches and seizures (art II § 10), the rights of the accused (art. II, § 14), and equal protection under the New Mexico Constitution (art. II, § 18); the NMCRA; and the RRPD Standards and Procedures Manual. *Id.* at 19.

D.    Count 14

In Count 14, brought against Defendant Posey, Plaintiff claims that Defendant Posey was dismissive of allegations brought to her attention by Plaintiff's mother. Doc. 42 at 24. Specifically, according to Plaintiff, his mother told Defendant Posey that she "felt she was being victimized by the lies being told to the RRPD by J[.]R[.]" and that she wished to inform the RRPD that it was giving J.R. preferential treatment, J.R. was using it as a weapon against Plaintiff, and J.R. was "lying to them without any proof." *Id.* Plaintiff alleges that Defendant Posey demonstrated bias favorable to J.R. and "was assuming that J[.]R[.] was a victim." *Id.* Plaintiff alleges that, after her interaction with his mother, he and Defendant Posey spoke on the phone. *Id.* at 25. According to Plaintiff, he sought to meet with Defendant Posey and "show her the pile of evidence he has" that he was a victim of "relentless attacks" by J.R. *Id.* Plaintiff claims that Defendant Posey would not agree to meet with him for more than 15 minutes and was dismissive of him. *Id.* In Plaintiff's view, these events demonstrate that law enforcement is

treating him "unequally" when compared to J.R. *Id.* Plaintiff claims this conduct is a violation

of the Fourteenth Amendment's Equal Protection Clause; violates the inherent rights (art. II, §

4), the right to be free from unreasonable searches and seizures (art II § 10), the rights of the

accused (art. II, § 14), and equal protection under the New Mexico Constitution (art. II, § 18); the

NMCRA; and the RRPD Standards and Procedures Manual. *Id.* at 24.

**C.      The State Law Claims in Plaintiff's Complaint Must Be Dismissed**

Prior to the passage of the NMCRA, there was no mechanism for bringing claims for

violations of the rights secured by the New Mexico Constitution outside of the New Mexico Tort

Claims Act, N.M. Stat. Ann. § 41-4-1 (1981) *et seq. Tucker v. Univ. of N.M. Bd. of Regents*, 618

F. Supp. 3d 1201, 1212-13 (D.N.M. 2022). The NMCRA provides:

> A person who claims to have suffered a deprivation of any rights, privileges or
> immunities pursuant to the bill of rights of the constitution of New Mexico due to
> acts or omissions of a public body or person acting on behalf of, under color of or
> within the course and scope of the authority of a public body may maintain an action
> to establish liability and recover actual damages and equitable or injunctive relief
> in any New Mexico district court.

§ 41-4A-3(B). In each of Plaintiff's claims, he invokes the NMCRA and certain provisions of

the New Mexico Constitution's Bill of Rights,[5] which are now enforceable under the NMCRA,

so the Court understands Plaintiff to allege violations of those rights and seek vindication under

the NMCRA because his state constitutional rights are not redressable in a legal action

independently. *See Tucker*, 618 F. Supp. 3d at 1212-13. However, his claims under the

NMCRA fail. The NMCRA states that all claims made pursuant thereto "shall be brought

---

[5]        In Count One of his Complaint, Plaintiff also invokes Article III, Section One of the New Mexico
Constitution, which speaks to the state government's separation of powers. Doc. 42 at 3. It is unclear what part of
this section Plaintiff alleges was violated, but it does not matter because he cannot sustain a claim for such conduct.
The NMCRA permits claims against public bodies, not individuals, for conduct which violates the state constitution's
bill of rights, found in Article II. N.M. Stat. Ann. § 41-4A-3(B), (C). And there is no other mechanism for litigants
to bring claims for constitutional claims in New Mexico, aside from the NMTCA, which, like the NMCRA, is a vehicle
for claims of a violation of the *rights* secured by the state constitution. *See Tucker*, 618 F. Supp. 3d 1201, 1212-13.

exclusively against a public body." § 41-4A-3(C).  Plaintiff does not name a public body as a defendant in his Complaint; rather, he brings claims only against individuals, and liability under the NMCRA must rest with a public body.  Thus, Plaintiff's claims under the NMCRA must be dismissed.  *See, e.g.*, *Gardner v. City of Albuquerque*, No. 23-CV-318, 2024 WL 36069, at *6 (D.N.M. Jan. 3, 2024) (dismissing with prejudice a state constitutional claim against an individual defendant "because claims bought pursuant to the NMCRA must be brought exclusively against a public body").

In Count 1, Plaintiff invokes the NMHRA.  Doc. 42 at 3.  "The NMHRA allows individuals to bring a lawsuit in the appropriate district court after exhausting their administrative remedies."  *Hunt v. Cent. Consol. Sch. Dist.*, 951 F. Supp. 2d 1136, 1190 (D.N.M. 2013).  "NMHRA claims must be administratively exhausted before being brought in federal court."  *Id.*  (internal quotation marks and citation omitted); *see also Tafoya v. Bobroff*, 865 F. Supp. 742, 747-48 (D.N.M. 1994) ("The New Mexico Supreme Court recently and unequivocally held that a plaintiff under the [NMHRA] must exhaust his or her administrative remedies against each defendant before he or she may sue the defendant in court.").  Nothing before the Court indicates that Plaintiff exhausted his administrative remedies with respect to his allegations that Defendant Hickerson violated the NMHRA.  So, Plaintiff's claim under the NMHRA must be dismissed.  *See, e.g.*, *Tafoya*, 865 F. Supp. at 747 (D.N.M. 1994) ("The Court will dismiss [the p]lainiff's claim under the [NMHRA] because [the p]laintiff has failed to exhaust her administrative remedies." (citation omitted)).

## D.    Plaintiff's Claim Under Title VII Must Be Dismissed

Also in Count 1, Plaintiff invokes Title VII.  Doc. 42 at 3.  "To bring an action in district court pursuant to Title VII, the plaintiff must show that [he] was an 'employee.'  Title VII

defines the term 'employee' as 'an individual employed by an employer.'"  *Kelley v. City of Albuquerque*, 542 F.3d 802, 807-08 (10th Cir. 2008) (quoting 42 U.S.C. § 2000e(f)).  Plaintiff does not make any allegations concerning any type of employment.  Thus, his claim under Title VII must be dismissed.  *See, e.g.*, *Riggs v. Cuna Mut. Ins. Soc'y*, 42 F. App'x 334, 335 (10th Cir. 2002) ("Title VII addresses only employment relationships.  [The plaintiff] did not allege, nor could she have alleged, that [the] defendant was her employer.  The district court ruled correctly in dismissing this claim." (citations omitted)).

**E.**      **Plaintiff Cannot Bring Claims Under the RRPD Standards and Procedures Manual**

As outlined above, for each Count at issue here, Plaintiff claims the alleged conduct violates the RRPD Standards and Procedures Manual.  However, this cannot be the basis of an independent claim for liability under Section 1983.  *Wilson v. Meeks*, 52 F.3d 1547, 1554 (10th Cir. 1995) ("[V]iolation of a police department regulation is insufficient for liability under [S]ection 1983.").  Therefore, to the extent Plaintiff's claims are based on alleged violations of the RRPD Standards and Procedures Manual, they must be dismissed.

**F.**      **Plaintiff's Remaining Claims Must Be Dismissed**

Plaintiff's remaining claims are those for alleged violations of his right to equal protection under the Fourteenth Amendment and malicious prosecution contrary to the Fourth Amendment's prohibition on unreasonable seizures.

      1.      Equal Protection

"The failure to conduct a full and fair investigation and prosecution of an alleged crime does not state a claim unless there is a violation of another recognized constitutional right." *Smallwood v. McDonald*, 805 F.2d 1036 (6th Cir. 1986) (citing *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curium)) (unpublished table decision).  *Smallwood*, 805 F.2d

1036.  In discussing this concept, another judge in this District approvingly quoted the following

passage relying on authority from the Sixth and Ninth Circuits:

> It is true that law enforcement officials can be liable for their inaction when they
> fail to perform a statutorily imposed duty to enforce the law equally and fairly.
> However, a failure to adequately investigate an incident does not state a claim
> unless the defendants violate a specific constitutional right of the plaintiff.  [T]he
> plaintiff merely requested an investigation by the FBI, and he alleges that the
> response was inadequate. On these facts, the district court was correct to conclude
> that he had failed to state a claim.  [The p]laintiff's complaint is simply that [the
> d]efendants did not properly investigate and prosecute his complaint.  As such, it
> does not state any cognizable constitutional violation and the Court must dismiss it
> for failure to state a claim upon which relief can be granted.

*White v. Houdf*, No. 07-CV-274, 2007 WL 9734256, at *1 (D.N.M. Apr. 30, 2007) (alteration

and citations omitted), *adopted* 2007 WL 9734007 (D.N.M. May 15, 2007).  Relying on this

passage, the judge in *White* summarized: "The complaint is devoid of any assertion that F.B.I.

agents are treating [the p]laintiff differently than any other citizen who has requested an

investigation based on similar allegations," and recommended dismissal.  *Id.*  The foregoing

concepts go to the heart of many of Plaintiff's allegations, for which he claims his Fourteenth

Amendment right to equal protection was violated, and inform the Court's analysis below.

The Fourteenth Amendment provides: "No State shall . . . deny to any person within its

jurisdiction the equal protection of the laws."  U.S. Const. amend. XXIV.  The root of equal

protection "is that the state treat all those similarly situated similarly, with its central purpose

being the prevention of official conduct discrimination on the basis of race or other suspect

classifications.  As such, equal protection only applies when the state treats two groups, or

individuals, differently."  *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004) (alterations,

internal quotation marks, and citations omitted).  Under the Equal Protection Clause, government

officials and entities cannot invidiously discriminate in their enforcement of the law or their

treatment of individuals.  *See, e.g.*, *Smith v. Ross*, 482 F.2d 33, 36-37 (6th Cir. 1973).  In addition

to allegations of disparate treatment, there must also be allegations of discriminatory intent: "To sustain a claim under the Equal Protection Clause, a plaintiff must provide evidence that he was treated differently from others who are similarly situated to him, and that the acts forming the basis of the plaintiff's claim were motivated by a discriminatory purpose." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1179 (10th Cir. 2003). "Equal protection jurisprudence has traditionally been concerned with governmental action that disproportionally burdens classes of citizens," however it also recognizes "class-of-one" claims where "a public official, with no conceivable basis for his action other than spite or some other improper motive . . . , comes down hard on a hapless private citizen." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215-16 (10th Cir. 2011) (internal quotation marks and citation omitted). Because Plaintiff does not purport to be a member of a protected class, the Court understands him to proceed under the "class-of-one" theory.

To allege an equal protection claim under the class-of-one theory, a litigant must show that he was (1) "intentionally treated differently from others similarly situated" in all material respects; and that (2) "there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Haik v. Salt Lake City Corp.*, 567 F. App'x 621, 632 (10th Cir. 2014). Under the first element, the allegations necessary to establish this level of similarity will vary depending on the nature of the case, and "[t]he more variables involved in the government action at issue, the more specifics the plaintiff will need to allege to allow for meaningful comparison between the plaintiff's (negative) experience and the (positive) experiences of others." *Haik*, 567 F. App'x at 632. "Because it is exceedingly difficult to demonstrate that any difference in treatment is not attributable to a quirk of the plaintiff or even to the fallibility of administrators whose inconsistency is as random as it is inevitable[,] courts

have imposed exacting burdens on plaintiffs to demonstrate similarity in class-of-one cases."

*Shifrin v. Toll*, 483 F. App'x 446, 449 (10th Cir. 2012) (omission, internal quotation marks, and

citation omitted).   Under the second element, which is an objective standard, a litigant must

show that the difference in treatment was "irrational and abusive," and "wholly unrelated to any

legitimate state activity."   *Kan. Penn Gaming*, 656 F.3d at 1216 (internal quotation marks and

citations omitted).

With respect to Count 1, the Court understands Plaintiff to allege that Defendant

Hickerson "gave preferential treatment" to J.R. and thereby violated Plaintiff's constitutional

right to equal protection.  Doc. 42 at 3.  Plaintiff's allegations do not state a valid claim for relief.

First, he does not allege that he was treated differently from another individual similarly situated

to him in all material respects.  While he appears to take issue with Defendant Hickerson's

approach in dealing with him and J.R., he does not allege that Defendant Hickerson treated him

differently than another similarly situated individual who requested a welfare check on a child.

*See Jennings v. City of Stillwater*, 383 F.3d 1199, 1213 (10th Cir. 2004) ("'Equal protection . . .

emphasizes disparity in treatment by a State between classes of individuals whose situations are

arguably indistinguishable.'" (quoting *Ross v. Moffitt*, 417 U.S. 600, 609 (1974))).  Lack of

distinction between individuals is "especially important in class-of-one cases," and it is absent

here.  *Id.*  To the extent Plaintiff's allegation that Defendant Hickerson threatened to "file a

stalking and harassment report against" him can be read to form the basis of Plaintiff's claim, it

is of no consequence.  Doc. 42 at 3.  "[V]erbal harassment or idle threats by a state actor do not

constitute a constitutional violation and are insufficient to support a § 1983 claim."  *Woods v.

Putnam Cnty. Sheriff's Dep't*, 178 F.3d 1298 (6th Cir. 1999) (unpublished table decision).  In

sum, in Count 1 of his Complaint, Plaintiff falls well short of pleading a viable claim for a violation of the Equal Protection Clause.  Accordingly, Count 1 must be dismissed.

Counts 10 and 12 suffer from the same defect of distinction as Count 1.  *See Jennings*, 383 F.3d at 1213.  The basis of Plaintiff's equal protection claims in Counts 10 and 12 is that Defendants Parker and Miles declined to investigate J.R. though the child Plaintiff shares with J.R. was allegedly exposed to drugs and alcohol in J.R.'s home and instead focused on an allegation that Plaintiff had inappropriate sexual contact with a minor.  Doc. 42 at 15-23.  Again, Plaintiff fails to adequately allege that he was treated differently from another individual similarly situated to him in all material respects.  It is true that Plaintiff and J.R. share a child. But that has nothing to do with the factual allegations at issue here.  Defendants Parker and Miles became aware of an allegation that Plaintiff had inappropriate contact with a minor and proceeded accordingly.  J.R. was not accused of having inappropriate contact with a minor, so Plaintiff and J.R. were not similarly situated in all material respects.

As to Count 14, the Court does not consider the first part of Plaintiff's allegations underlying his claims—the allegations bearing on his mother's interactions with Defendant Posey—because Plaintiff cannot use his mother's interests as the basis of his claim to relief.  He has standing only to assert his own interests.  *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.");￼ *see also Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1299 (10th Cir. 2011) ("The right to appear pro se in a civil action in federal court is guaranteed by 28 U.S.C. § 1654.  Because *pro se* means to appear for one's self, however, a person may not appear on another person's behalf in the other's cause; rather, a person must be

litigating an interest personal to him." (alterations, internal quotation marks, and citation

omitted)).  So, the Court considers only the allegations that pertain to him.

In Count 14, Plaintiff alleges that Defendant Posey treated him in a manner unequal to

how other law enforcement personnel treated J.R.  Doc. 42 at 25.  More specifically, Plaintiff

claims that he was actually "the victim" of J.R. but law enforcement believed J.R.'s allegations

and did not believe him.  *Id.*  Again, Plaintiff does not allege that an individual similarly-situated

to him in all material respects was treated differently than him.  First, Plaintiff does not allege

that he accused J.R. of committing any crimes against him and that his reporting was rebuffed.

In contrast, it is clear from Plaintiff's Complaint that, in her contact with law enforcement, J.R.

accused Plaintiff of some criminal activity for which a restraining order may be warranted.  *Id.*

Significantly, too, Plaintiff does not allege that J.R. had contact with Defendant Posey directly.

Rather, according to Plaintiff, J.R. had contact with Defendant Miles and a colleague of

Defendant Posey who also works in "the CVAU, a specific task force dealing with domestic

violence victims," but alleges the CVAU was treating him differently than J.R.  *Id.* at 24-25.  It is

true that the failure to equally "provide police protection is subject to the equal protection clause

under Section 1983."  *Watson v. City of Kan. City*, 857 F.2d 690, 694 (10th Cir. 1988).  But

Plaintiff does not claim he sought such protection—he claims he sought vindication from J.R.'s

"false claims."  Doc. 42 at 25.  In short, Plaintiff and J.R. were not similarly situated individuals

because they were not seeking the same thing from law enforcement: J.R. used law enforcement

to report alleged crimes committed against her by Plaintiff, while Plaintiff sought the time and

attention of law enforcement (in this instance, Defendant Posey) to provide a "pile of evidence"

that J.R. was lying.  *Id.* at 24-25.  Because Plaintiff's situation is distinguishable from J.R.'s, *see*

*Jennings*, 383 F.3d at 1213, this claim must be dismissed.

Finally, common to all of Plaintiff's equal protection claims, the Court notes that, even if Plaintiff had plausibly pled that he was treated differently than other similarly-situated individuals, the viability of his claims is doubtful for another reason.  In light of the Supreme Court's holding in *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008) regarding the limits of equal protection claims built on a class-of-one theory, at least one Court of Appeals has enacted limits in the context of Plaintiff's claims: "In light of *Engquist*, . . . we conclude that while a police officer's investigative decisions remain subject to traditional class-based equal protection analysis, they may not be attacked in a class-of-one equal protection claim."  *Flowers v. City of Minneapolis*, 558 F.3d 794, 799-800 (8th Cir. 2009).  *But cf. Hanes v. Zurich*, 578 F.3d 491, 495 (7th Cir. 2009) ("*Engquist* does not support the . . . argument that malicious police conduct is off-limits from class-of-one claims.").  Whether the same is true in the Tenth Circuit remains an open question.  *See Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1255-57 (10th Cir. 2016); *Kan. Penn Gaming*, 656 F.3d at 1217 n.1 (declining to pass on the question whether "*Engquhist* established a per se rule that *any* discretionary decision is immune from class-of-one liability").  However, *Flowers* has been cited approvingly at least once in this District, *see Gygi v. City of Artesia*, No. 19-CV-461, 2019 WL 5789290, at *6 (D.N.M. Nov. 6, 2019), and its rationale suggests Plaintiff's claims based on equal protection violations are without merit.

2.   Malicious Prosecution

In Count 11 of his Complaint, Plaintiff alleges malicious prosecution in violation of the Fourth Amendment against Defendant Parker.  Doc. 42 at 15.  He brings the same claim against Defendant Miles in Count 13.  *Id.* at 19.  "Unreasonable seizures imposed with legal process precipitate Fourth Amendment malicious-prosecution claims."  *Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir. 2013).  The elements of such a claim are: "(1) the defendant caused the

16

plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of

the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or

prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages."

*Margheim v. Buljko*, 855 F.3d 1077, 1085 (10th Cir. 2017).  "A malicious-prosecution claim is

not cognizable until all the elements are satisfied."  *Id.* (internal quotation marks and citation

omitted).

These claims fail at the first element because Plaintiff has not been continually confined

or prosecuted for any crime related to the events at issue.  *See, e.g.*, *Fisher v. Koopman*, No. 15-

CV-166, 2016 WL 8540859, at *6 (D. Colo. Aug. 1, 2016).  While Plaintiff claims that

Defendants Parker and Miles "charg[ed] him with felony sexual criminal contact with a minor,"

this is not supported by the information before the Court.  Doc. 128 at 16.  In fact, according to

Plaintiff, while Defendants Parker and Miles sent information to the Sandoval County District

Attorney's Office, that agency did not pursue criminal charges against Plaintiff, and he was

never formally charged with a crime.  *Id.* at 14, 16.  Even still, where an individual "has not been

subjected to prosecution as the result of the charge," there is no cause of action for malicious

prosecution.  Restatement (Second) of Torts § 653 cmt. c (Am. Law Inst. 1977).  Thus, these

claims must be dismissed.

### III. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the presiding judge **GRANT**

Defendants' Motion and **DISMISS** Counts 1 and 10-14 of Plaintiff' Complaint under Rule

12(b)(6) because Plaintiff has failed to state a claim upon which relief can be granted.

Specifically, the undersigned recommends that dismissal of Plaintiff's claims under the

NMCRA, Title VII, the RRPD Standards and Procedures Manual, the Fourteenth Amendment,

and the Fourth Amendment be **WITH PREJUDICE** because any amendment to such claims

would be futile.  *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A

dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule

12(b)(6) and granting leave to amend would be futile.").  Futility exists because, as illustrated in

detail in the Court's analysis above, Plaintiff cannot state a claim for relief against the individual

Defendants under the NMCRA; Plaintiff cannot bring a claim under Title VII because he was not

an employee under the statute; Plaintiff cannot premise a Section 1983 claim on the RRPD

Standards and Procedures Manual; Plaintiff, as far as the events at issue in this case are

concerned, was never similarly situated to J.R. in all material respects such that equal protection

would apply; and Plaintiff was never confined or prosecuted for a crime related to the events at

issue.

> The undersigned further recommends that dismissal of Plaintiff's claim under the

NMHRA be **WITHOUT PREJUDICE** because Plaintiff could, in theory, cure this claim by

exhausting his administrative remedies.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

**JOHN F. ROBBENHAAR**
United States Magistrate Judge