IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JARROD LOWREY,

        Plaintiff,

        vs.                        Civ. No. 23-372  JCH/JFR

DAVID PORTIS, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the *Proposed Findings and Recommended Disposition* ("PFRD") by United States Magistrate Judge John F. Robbenhaar, filed August 20, 2024. (PFRD, ECF No. 157.) The PFRD notified the parties that they may file written objections within 14 days of service of a copy of the PFRD, and that the failure to file objections would result in no appellate review being allowed. (*Id.* at 18.) On October 18, 2024, Plaintiff Jarrod Lowrey, who is proceeding *pro se*, filed *Objections to the Magistrate's Proposed Findings and Recommended Disposition* (ECF No. 175) (hereinafter "Objections"). On November 1, 2024, Defendants David Portis, Phillip Gallegos, Nick Army, Ben Parker, John C. Miles, Jonathan Hickerson, and Marie Posey (collectively referred to herein as "Defendants")) filed a Response in Opposition to Plaintiff's Objections (ECF No. 186). Plaintiff filed a *Notice of Completion of Briefing* (ECF No. 193) on November 20, 2024.

## BACKGROUND

Defendants David Portis, Phillip Gallegos, and Nick Army filed a *Motion for Summary Judgment Dismissing Counts 2-9* (ECF No. 95). Defendants Portis, Gallegos, Army, Parker, Miles, Hickerson, and Posey (the Defendants) subsequently filed a *Motion to Dismiss Counts 1, and 10*

*through 14* (ECF No. 114). The parties completed briefing on the motion to dismiss. (*See* Pl.'s Resp., ECF No. 128; Defs.' Reply, ECF No. 132.) Plaintiff, however, did not respond to the motion for summary judgment.

Instead, Plaintiff filed a *Rule 56(d) Motion for Dismissal of Summary Judgement Without Prejudice* (ECF No. 105), and a *Rule 36(a)6 and 37(a) Motion to Compel* (ECF No. 120). In the Rule 56(d) motion, Plaintiff asserted, among other things, that the summary judgment motion was premature because discovery was ongoing, he had 173 outstanding discovery requests, and he could not adequately respond to the motion until the completion of discovery. (*See* Pl.'s Rule 56(d) Mot. 1-4, ECF No. 105.) Plaintiff asked the Court in the motion to compel to review specified discovery requests for sufficiency and to impose sanctions based on Defendants' alleged failure to respond properly to 173 discovery requests. (Pl.'s Mot. to Compel 2-3, ECF No. 120.)

On May 30, 2024, Judge Robbenhaar entered an *Order Denying Plaintiff's Motion to Compel*, concluding that Plaintiff failed to show the inadequacy of Defendants' discovery responses and that sanctions were not warranted. (Order 17-18, ECF No. 136.) Judge Robbenhaar subsequently entered an *Order Denying Plaintiff's Motion Under Rule 56(d)* after finding that Plaintiff did not meet his Rule 56(d) burden to identify facts not available to him that he expected to uncover in discovery, why such facts could not be presented at the time, the steps he took to obtain the facts, and how additional time would allow him to do so. (Order 3-4, 7, ECF No. 141.) Although Judge Robbenhaar gave Plaintiff 14 days to file a summary judgment response, (*see id.* at 7), Plaintiff instead filed a motion to reconsider the orders on the motion to compel and Rule 56(d) motion. (Pl.'s Mot. to Reconsider, ECF No. 144). On August 23, 2024, Judge Robbenhaar entered an Order (ECF No. 158), denying the motion to reconsider.

Meanwhile, on August 20, 2024, Judge Robbenhaar entered his PFRD recommending that Defendants' motion to dismiss be granted and Counts 1 and 10-14 be dismissed. (PFRD 1, ECF No. 157.)[1] As per Federal Rule of Civil Procedure 72(b)(2), objections were due no later than September 6, 2024.[2] Rather than file his objections, on September 5, 2024, Plaintiff filed a Notice of Appeal (ECF No. 159) of the August 23, 2024, Order denying his Rule 59(e) motion. The Tenth Circuit determined that it lacked jurisdiction to consider the appeal because Plaintiff attempted to appeal an order on a non-dispositive pretrial matter that is not a final appealable order. (Order 2, ECF No. 168.) Accordingly, on October 9, 2024, the Tenth Circuit dismissed the appeal. (*Id.*) Nine days later, on October 18, 2024, Plaintiff filed *Objections to the Magistrate's Proposed Findings and Recommended Disposition* (ECF No. 175), and Defendants thereafter responded.

## STANDARD OF REVIEW

Where a party timely objects to the magistrate judge's proposed disposition, the Court must conduct a de novo review of all portions of the recommendation to which the party objected and "may accept, reject, or modify, in whole or in part, the findings or recommendations." 28 U.S.C. § 636(b)(1). *See also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been *properly* objected to.") (emphasis added). De novo review requires the district judge to consider the relevant portions of the record, not merely to review the magistrate judge's recommendation. *In re Griego*, 64 F.3d 580, 584 (10th Cir. 1995). The Tenth Circuit follows a "firm waiver rule" whereby "timely objection to the magistrate judge's

---

[1] In the PFRD, Judge Robbenhaar pointed out that, while Defendants proceed together in the motion to dismiss, "the Counts at issue pertain only to Defendants Hickerson (Count 1), Parker (Counts 10 and 11), Miles (Counts 12 and 13), and Posey (Count 14)." (PFRD 2 n.4, ECF No. 157.) Because all the Defendants are asserting the arguments, the Court will refer herein to the arguments of the "Defendants." Like Judge Robbenhaar, the Court recognizes that the counts at issue here pertain to the smaller subset of the Defendants.

[2] Objections were due within fourteen days, on September 3, 2024. However, three additional days were added to accommodate service by mail. *See* Fed. R. Civ. P. 6(d).

recommendation is a condition for appellate review." *Wardell v. Duncan*, 470 F.3d 954, 958 (10th Cir. 2006). The failure to make timely and specific objections to the magistrate judge's PFRD waives appellate review of both factual and legal questions. *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059-60 (10th Cir. 1996).

The waiver rule, however, will not apply (1) when a pro se litigant was not notified of the time period for filing an objection and the consequences of failing to object, (2) when the interests of justice dictate otherwise, or (3) when the party shows plain error. *See Wardell*, 470 F.3d at 958. In determining whether the interests-of-justice exception applies, a court considers a pro se litigant's effort to comply, the plausibility and strength of the explanation for why he did not comply, and the importance of the issues raised. *Johnson v. Reyna*, 57 F.4th 769, 778 (10th Cir. 2023). This exception is similar to reviewing for plain error. *Id.* "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *Morales-Fernandez v. INS*, 418 F.3d 1116, 1122-23 (10th Cir. 2005)).

## ANALYSIS

As an initial matter, the parties dispute the standard of review that applies and whether Plaintiff waived any objections for lack of timeliness. Plaintiff contends that his objections were timely filed, and de novo review applies.

### A. Plaintiff's Objections are Untimely.

According to Federal Rule of Civil Procedure 5(b)(2)(c) and 6(d), three days are added after the period would otherwise expire to accommodate service by mail to Plaintiff. Given the 14-day deadline plus a 3-day mailing extension, it is undisputed that Plaintiff's objections to the PFRD were due on September 6, 2024, 17 days after Judge Robbenhaar entered the August 20, 2024,

4

PFRD. (*See*, *e.g.*, Pl.'s Obj. 1, ECF No. 175 (admitting objections were due September 6, 2024).) Plaintiff filed his Objections on October 18, 2024, well after the deadline.

Plaintiff nonetheless argues that his objections are timely, because his appeal to the Tenth Circuit divested this Court of jurisdiction, and because he intends to file a motion for *en banc* reconsideration with the Tenth Circuit, "which he expects to prevail on and so this Court has yet to regain jurisdiction from the higher court." (Pl.'s Obj. 1, ECF No. 175.). While not well-developed, this argument appears to be one for or akin to tolling or finding that the matter should have been stayed pending the resolution of the appeal. Plaintiff's premise, however, is mistaken. "The filing of a notice of appeal divests the district court of jurisdiction with two recognized exceptions: (1) untimeliness of the notice, and (2) dependence on an unappealable order." *United States v. 397.51 Acres of Land*, 692 F.2d 688, 693 (10th Cir. 1982). Plaintiff's Notice of Appeal referenced non-appealable orders such that this Court was not divested of jurisdiction. Indeed, the Tenth Circuit, in its Order dismissing Plaintiff's appeal, explained that it lacked jurisdiction because "the magistrate judge's order is not a final appealable order." (Order 2, ECF No. 168.) The appeal thus did not prevent Plaintiff from filing his objections with the district court. *See also Arthur Andersen & Co. v. Finesilver*, 546 F.2d 338, 340-41 (10th Cir. 1976) ("If the notice of appeal is deficient by reason of … reference to a non-appealable order …, the district court may ignore it and proceed with the case."). Accordingly, no grounds justify tolling the deadline for filing objections, and Plaintiff's objections are untimely. The firm waiver rule will thus apply, absent an exception.

**B. No Exceptions to the Firm Waiver Rule Apply.**

**1. Plaintiff was properly notified of the consequences for failing to object.**

The first exception to the firm waiver rule applies when "a *pro se* litigant has not been informed of the time period for objecting and the consequences of failing to object." *Morales-Fernandez*, 418 F.3d at 1119. It is undisputed that Magistrate Judge Robbenhaar in the PFRD notified the parties that objections were due within 14 days of service of a copy of the PFRD as well as of the consequences for failing to object: "If no objections are filed, no appellate review will be allowed." (PFRD 18, ECF No. 157). The first exception therefore does not apply.

### 2. The first and second interests-of-justice factors weigh against applying an exception to the firm waiver rule.

A district court may also decline to follow the firm waiver rule when the interests of justice compel review. *See Duffield v. Jackson*, 545 F.3d 1234, 1238 (10th Cir. 2008). "Although interests of justice is a rather elusive concept, we have considered factors such as a *pro se* litigant's effort to comply, the force and plausibility of the explanation for his failure to comply, and the importance of the issues raised." *Id.* (citation and quotations omitted). The first two factors are not present here. Plaintiff believed that his appeal divested this Court of jurisdiction, which was incorrect. But even accounting for his misconception and even if the Court allowed for tolling during the appeal process, Plaintiff's effort fell short of that needed to warrant application of the "interests of justice" exception. Plaintiff filed his Notice of Appeal the day before his objections were due, leaving only one day left for his deadline. The Tenth Circuit dismissed his appeal on October 9, 2024, and clearly stated in the Order that this "case *remains ongoing* in the district court." (Order 2, ECF No. 168 (emphasis added).) His objections would therefore have been due the day after the Tenth Circuit dismissed his appeal. Allowing for three additional days to account for mailing would have given him four days after the Tenth Circuit dismissed his appeal to show efforts to comply with the deadline. Yet, he did not file his objections until October 18, 2024, nine days after the Tenth Circuit entered its order dismissing his appeal. Nor did he move for an

extension of time to file objections. Plaintiff thus has not shown that his efforts to comply or his reasons for failing to timely file his objections weigh in favor of applying the exception to the firm waiver rule.

Finally, the Court considers the importance of the issues raised. Because this factor is similar to the review for plain error, the Court will analyze the importance of the issues in the following section when considering whether the PFRD contains errors.

### 3. Neither the importance of the issues raised nor plain error support application of an exception to the firm waiver rule.

As noted above, in reviewing for plain error, a court considers whether there is (1) error, (2) that is plain, (3) affecting substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings.

#### a. With one exception, Judge Robbenhaar's PFRD contained no errors.

##### 1) No improper bias.

Turning first to Plaintiff's allegations of bias, the moving party has a substantial burden to establish that the judge is not impartial. *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992); *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987). A judge has a duty to disqualify himself in any proceeding where "his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). A judge, however, has an obligation not to recuse when there is no cause for him to do so. *Hinman*, 831 F.2d at 939. Plaintiff has not demonstrated that Judge Robbenhaar was impermissibly biased against him. Nor could his impartiality reasonably be questioned based on the record.

##### 2) No error in limiting review to pleadings, not extraneous materials.

Next, Plaintiff objects to Magistrate Judge Robbenhaar's decision to consider only the contents of the pleadings, and not extraneous material. Plaintiff argues that Judge Robbenhaar improperly cited *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215-16 (10th Cir. 2007), a case

brought only under Rule 12(b)(6), because the motion at issue here was brought pursuant to Rule 12(b) *and* (c). According to Plaintiff, Rule 12(c) motions allow for the consideration of evidence outside the pleadings. (Pl.'s Obj. 4-5, ECF No. 175.) Contrary to Plaintiff's contention, courts evaluate motions brought under Rules 12(b)(6) and (c) using the same standard. *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000).

As set forth by the Tenth Circuit in *Alvarado*, a district court, when presented with evidence outside the pleadings, may decide not to consider the evidence and analyze the motion as a motion to dismiss under Rule 12(b)(6). *Alvarado*, 493 F.3d at 1215. A court, however, may consider the evidence; but if it does, it must convert the motion to one for summary judgment under Rule 56, and give all parties a chance to present additional relevant evidence. *Id.* A court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the authenticity of the documents. *Id.* The standard for converting either a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings to a motion for summary judgment is the same. *Lowe v. Town of Fairland, Okl.*, 143 F.3d 1378, 1381 n.5 (10th Cir. 1998).

Plaintiff argues that Judge Robbenhaar erred in relying on *Alvarado*, because, under Rule 12(c), a court should consider Plaintiff's exhibits that were attached to the complaint and incorporated into the complaint. Plaintiff submitted with his initial complaint numerous police reports, codes of ethics, standards of conducts, lapel videos, and an audio recording of Plaintiff's conferences with RRPD, among other things. (*See* Pl.'s Ex. List, ECF No. 2; Notice of Lodging, ECF No. 3.) Defendants also attached and referred to documents that Plaintiff incorporated by reference into the complaint. (*See* Defs.' Mot., ECF No. 114-1 through 114-4.) Judge Robbenhaar

8

declined to consider any of the extraneous material, limiting his consideration to the factual allegations set forth in the amended complaint. (*See* PFRD 1-3 & n.2, ECF No. 157.)

The decision whether to consider evidence outside the pleadings is discretionary. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) ("When presented with a Rule 12(b)(6) motion, the district court has *broad discretion* in determining whether to accept materials beyond the pleadings.") (Italics added). Judge Robbenhaar did not err in declining to consider evidence outside the amended complaint when analyzing Defendants' Rule 12(c) motion.

### 3) The PFRD did not contain mischaracterizations or errors in the recitations of the facts and allegations of the amended complaint.

Plaintiff additionally contends that Judge Robbenhaar misquoted and mischaracterized his complaint to "rewrite the complaint as conclusory allegations." (Pl.'s Obj. 4-6, ECF No. 175). In particular, he objects to portions of the PFRD's factual recitations in sections B, C, and D. (*Id.* at 5-6.) Having compared the PFRD's factual summary of the amended complaint with the amended complaint, the Court finds that the summary does not constitute a false or invented narrative and was not deceptive.

### 4) The sua sponte nature of raising arguments or issues was not error.

In the next objection, Plaintiff argues that Judge Robbenhaar erred in "his 3rd argument" by raising "an argument that was never raised in the briefs by either RRPD or by Plaintiff." (*Id.* at 6.) While it is not entirely clear what the "3rd argument" is, Plaintiff may be referring to Judge Robbenhaar's dismissal of Plaintiff's New Mexico Human Rights Act ("NMHRA") claim in Count 1 for failure to exhaust administrative remedies. Additionally, Plaintiff objects that Judge Robbenhaar erred in sua sponte raising a "novel theory" to dismiss Plaintiff's state law claims. (Pl.'s Obj. 7, ECF No. 175.)

Generally, a court has "discretion to raise and decide issues sua sponte." *Denver Homeless Out Loud v. Denver, Colorado*, 32 F.4th 1259, 1270 (10th Cir. 2022). That Judge Robbenhaar raised an issue sua sponte is not itself error and does not establish that he is impermissibly biased against Plaintiff.

Moreover, regarding the NMHRA claim, New Mexico law indicates that exhausting administrative procedures under the NMHRA is necessary to give the district court jurisdiction. *See Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 17, 127 N.M. 282. *See also Herrera v. Las Cruces Public Schools*, 695 F. App'x 361, 366-67 (10th Cir. June 13, 2017) (explaining that issue of exhaustion under NMHRA is "a jurisdictional issue"). "A jurisdictional defect may not be waived and may be raised at any stage of the proceedings, even sua sponte by the appellate court." *Armijo v. Save 'N Gain*, 108 N.M. 281, 282 (Ct. App. 1989). Plaintiff provided no argument or law to the contrary, and therefore, has not shown that dismissal sua sponte of the NMHRA claim for failure to allege exhaustion of administrative remedies was in error. Moreover, even if consideration of the exhaustion issue was not appropriate *sua sponte*, Plaintiff failed to allege enough facts to state an NMHRA claim against Defendant Hickerson. Consequently, Judge Robbenhaar did not err in dismissing Plaintiff's NMHRA claim. Plaintiff's objection is overruled.

### 5) Dismissal of New Mexico Civil Rights Act claims based on the failure to assert a claim against a public body was erroneous.

Next, Plaintiff objects to the Magistrate Judge's recommendation to dismiss Plaintiff's state law claims brought under the New Mexico Civil Rights Act ("NMCRA"), N.M.S.A. § 41-4A-3(C). Judge Robbenhaar determined that Plaintiff's claims brought under the bill of rights of the New Mexico Constitution (Article II) are only redressable under the NMCRA, and that the NMCRA only permits suits against a public body, rather than against individuals. (*See* PFRD 8-9, ECF No. 157.) He then concluded that the NMCRA claims must be dismissed because "Plaintiff

does not name a public body as a defendant in his Complaint; rather, he brings claims only against individuals, and liability under the NMCRA must rest with a public body." (*Id.*)

The plain terms of the NMCRA only allow such claims to be brought "exclusively against a public body." N.M.S.A. § 41-4A-3. The NMCRA defines "public body" as "a state or local government, an advisory board, a commission, an agency or an entity created by the constitution of New Mexico or any branch of government that receives public funding…." N.M. Stat. Ann. § 41-4A-2. Plaintiff named in his suit the individual RRPD officers and did not expressly name the local government agency. He asserts, however, that he sued the individual officers "in their individual and official capacities" and "even served the complaints to the City of Rio Rancho, which the RRPD understood as serving the city of Rio Rancho in the state claims." (Pl.'s Obj. 7-8, ECF No. 175.) Indeed, in his amended complaint, Plaintiff named each officer in his or her "official and individual capacity." (Am. Comp. 1, ECF No. 42.)

Under federal law, courts have construed official-capacity suits to represent another way of pleading a case against the entity of which the officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. The New Mexico Supreme Court has likewise recognized that an official capacity suit is a suit against the state entity itself. *See Pacheco v. Hudson*, 2018-NMSC-022, ¶ 61, 415 P.3d 505 ("New Mexico precedent recognizes that a lawsuit against a court employee, such as a designated records custodian, in his or her official capacity is a suit against the court itself."). Given this authority and the liberal pleading standard afforded to *pro se* litigants, the official capacity claims against the officers should be construed as claims against the public body for which they serve, which in this case is a suit against the City of Rio Rancho. Dismissal on this

ground was therefore in error. Nevertheless, the Court will discuss in section (B)(3)(b) why this error does not amount to plain error and why dismissal of the claims is appropriate.

### 6)  Dismissal of Title VII claims and RRPD manual claims was correct.

Regarding the dismissal of claims under Title VII or based on the RRPD Standards and Procedures Manual ("RRPD SOPs"), Plaintiff says that the Magistrate correctly stated that the Title VII and RRPD SOPs referenced in the complaint were not intended to be federal or state claims, but only as a supporting text to the individual counts. (Pl.'s Obj. 8, ECF No. 175.) To the extent the amended complaint appears to assert them as separate claims, dismissal was appropriate.

### 7)  Dismissal of equal protection claims was not error.

In Plaintiff's seventh, eighth, and tenth objections, he argues error in the proposed dismissal of his equal protection claims against Officer Hickerson in Count 1, Detective Parker in Count 10, Detective Miles in Count 12, and Officer Posey in Count 14. (*See* Pl.'s Obj. 9-15, ECF No. 175.) Plaintiff argues that the factual allegations in the amended complaint establish that each named defendant gave preferential treatment to the child's mother, J.R., over Plaintiff without a reasonable basis to do so. Plaintiff contends that Judge Robbenhaar erred in concluding that Plaintiff and J.R. were not similarly situated.

To state a claim under § 1983 for a violation of the Fourteenth Amendment's Equal Protection Clause, the plaintiff must show that the defendant treated the plaintiff differently than another who is similarly situated without a rational basis to do so. *Van Sant & Co. v. Town of Calhan*, 83 F.4th 1254, 1282 (10th Cir. 2023). As to a class of one claim, the plaintiff must first establish "that others, similarly situated *in every respect* were treated differently." *Id.* (quoting *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011)) (emphasis added).

As to Count 1, Plaintiff argues that he and J.R. could not be more similarly situated because they share parenting of their minor child. (Pl.'s Obj. 9-11, ECF No. 175.) In Count 1, Plaintiff alleges that Defendant Hickerson was dispatched to a welfare check of Plaintiff's minor child, but instead of locating the child, Defendant Hickerson in retaliation for wasting his time said he was driving to the child's mother's home to file a stalking and harassment report against Plaintiff. (Am. Compl. 3, ECF No. 42.) Plaintiff asserts that Defendant Hickerson gave preferential treatment to the child's mother over Plaintiff for no clear reason to do so and applied unequal treatment under the law. (*Id.* at 3-4.) Key differences, however, exist between Plaintiff and J.R. Defendant Hickerson was dispatched to do a welfare check of the shared child, based on a call by Plaintiff. (*See id.*) The allegations do not show that J.R. or another person called in a welfare check under similar circumstances. Judge Robbenhaar did not err in concluding that Plaintiff failed to show he was similarly situated to another person and in dismissing the equal protection claim against Defendant Hickerson.

With respect to Counts 10 and 12, Plaintiff argues that he and J.R. were similarly situated because they "were both being investigated for child abuse by defendants Parker and Miles at the exact same time," and they both "share a child together." (Pl.'s Obj. 11, ECF No. 175.) Nonetheless, after noting those similarities, Plaintiff then discussed the factual allegations that diverged. According to the amended complaint, RRPD was investigating J.R. for allowing children in the home to be exposed to meth use, for brainwashing the child to call J.R.'s meth addict boyfriend by a false name, for allowing another child to smoke marijuana and drink alcohol in the home, and for a drug dealer coming by the home to sell J.R.'s daughter drugs. (*See* Am. Compl. ¶¶ 126-127, ECF No. 42.) Detective Parker switched the focus of the investigation against Plaintiff after J.R. and her father alleged that Plaintiff had inappropriately touched J.R.'s daughter six to

seven years ago. (*See id.* ¶¶ 129, 137.) The allegations against J.R. and Plaintiff were of a different nature. The complaint thus does not show that Plaintiff was similarly situated to J.R. or another individual to sustain the equal protection claims in Counts 10 and 12, and thus, Judge Robbenhaar did not err in dismissing those claims.

As for the equal protection claim in Count 14, Plaintiff contends in his tenth objection that he was similarly situated to J.R. because he was asking Defendant Posey for the same treatment that she had given J.R. (Pl.'s Obj. 13, ECF No. 175.) The allegations in Count 14, however, do not show that J.R. and Plaintiff are similarly situated in all material respects. Judge Robbenhaar did not err in dismissing this claim.[3]

### 8) Dismissal of malicious prosecution claims was not in error.

Plaintiff objects to the proposed dismissal of his malicious prosecution claims in Counts 11 and 13, arguing that the Magistrate Judge relied on his own "counter narrative," rather than the numerous concrete factual allegations in the amended complaint and incorporated exhibits. He further contends the Magistrate Judge erred in failing to consider *Thompson v. Clark*, 596 U.S. 36 (2022). The Supreme Court in *Thompson* held that to demonstrate the favorable termination of a criminal prosecution for a § 1983 malicious prosecution claim, a plaintiff need only show that his prosecution ended without a conviction. *Id.* at 39. Plaintiff contends that Judge Robbenhaar erroneously relied on the now overruled case of *Margheim v. Bulko*, 855 F.3d 1077, 1085 (10th Cir. 2017), in stating the legal standard for malicious prosecution. (Pl.'s Obj. 13, ECF No. 175). *Thompson* did not overrule the five-element test for malicious prosecution claims set forth in *Margheim*; rather, it only clarified the meaning of the second element of the legal standard. *See*

---

[3] Plaintiff also accuses Judge Robbenhaar of using "fake citations" when he used "Id." (Pl.'s Obj. 13, ECF No. 175.) "Id." is simply a shorthand way of referring to the immediately preceding cited authority. *See* The Bluebook, A Uniform System of Citation 79 (21st ed.). This objection is frivolous.

*Shrum v. Cooke*, 60 F.4th 1304, 1310 (10th Cir. 2023) (continuing to follow five-element test for malicious prosecution claims even after *Thompson*, but noting that following *Thompson*, its prior precedents applying the favorable termination element were no longer good law).

Significantly, Judge Robbenhaar did not rely on the second element in recommending dismissal of Plaintiff's claim. Rather, he explained that Plaintiff could not satisfy the first element for such a claim – that the defendant caused the plaintiff's continued confinement or prosecution. (PFRD 16-17, ECF No. 157.) Malicious prosecution claims rooted in the Fourth Amendment require a seizure based on the initiation of criminal proceedings that are dismissed before trial. *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007). A seizure in a § 1983 malicious prosecution claim requires an arrest or imprisonment. *See id.* at 914-15. Those factual allegations are missing here. Although Plaintiff asserts in his objections that Defendants Parker and Miles "completely fabricated the charges against Plaintiff," (Pl.'s Obj. 13, ECF No. 175), he does not point the Court to allegations in his amended complaint showing that he suffered arrest, physical confinement, or the initiation of judicial proceedings against him as a result of the investigations, as required for a malicious prosecution claim. Instead, Plaintiff alleges that Detective Parker "closed the case into the allegations against Plaintiff, saying it was 'unsubstantiated.'" (Am. Compl. 17, ¶ 148, ECF No. 42.) As for Defendant Miles' report, Plaintiff likewise alleges that Detective Miles closed the case after admitting that J.R.'s daughter was not cooperating with law enforcement's investigation. (*Id.* at 22-23, ¶ 196.)[4] Judge Robbenhaar thus did not err in dismissing Plaintiff's malicious prosecution claims in Counts 11 and 13 for failure to allege that Plaintiff suffered confinement or prosecution. *See Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1244 (10th Cir. 2003) (concluding that there

---

[4] Plaintiff in his initial response also did not dispute that no judicial proceedings were initiated against him: "The Sandoval DA watched the videos Parker and Miles attached to their bogus charges they sent up" and he "was exonerated by the Sandoval DA's office." (Pl.'s Resp. 16, ECF No. 128.)

is no Fourth Amendment claim for malicious prosecution where defendant did not initiate or

procure initiation of criminal proceedings).[5]

### b. No error affected substantial rights or the fairness of judicial proceedings.

The only error in the PFRD relates to dismissing the NMCRA claims for failure to allege

a claim against a public body. Error alone, however, is not enough to warrant an exception to the

firm waiver rule. Plaintiff must also show that the error is plain, it affects substantial rights, and it

seriously affects the fairness, integrity, or public reputation of judicial proceedings.

Defendants asserted in their motion to dismiss that the New Mexico constitutional claims

should be dismissed for failure to state claims on grounds that the Magistrate Judge did not reach

in the PFRD. If the NMCRA claims would be dismissed on other grounds, then the dismissal of

the claims would not be plain error affecting substantial rights or the fairness of the judicial

proceedings. For the reasons given below, other grounds support the dismissal of Plaintiff's

NMCRA claims.

### 1) Article 2, Section 4 claims

In Counts 1 and 10-14, Plaintiff asserts claims under Article II, Section 4 of the New

Mexico Constitution, which recognizes that all persons have certain inherent rights including the

"rights of enjoying and defending life and liberty, of acquiring, possessing and protecting property,

and of seeking and obtaining safety and happiness." N.M. Const., Art. II, § 4. This section "has

been sparsely interpreted" by New Mexico courts. *Morris v. Brandenburg*, 2015-NMCA-100, ¶

39, 356 P.3d 564. According to Defendants, given the limited New Mexico law recognizing causes

of action under this section, the allegations in the amended complaint do not state a claim.

---

[5] Plaintiff alleges that CYFD seized his child on June 16, (Am. Compl. 17, ¶ 141, ECF No. 42), but there is no allegation that Plaintiff himself was seized.

Regarding his claim against Defendant Hickerson, Plaintiff asserts that he violated his right to obtain safety and happiness when he failed to investigate fully the welfare check and instead threatened to file a stalking and harassment report against Plaintiff. (*See* Pl.'s Resp. 8, ECF No. 128.) He argues that Defendants Parker and Miles violated his right to liberty and happiness by conspiring through false allegations to put him in prison. (*Id.* at 16.) Plaintiff's allegations against Defendant Posey relate to her alleged unequal treatment of J.R. and him. As noted *supra*, Plaintiff's allegations do not show that he suffered criminal prosecution or confinement as a result of the investigations. Plaintiff also failed to cite any authority indicating that the New Mexico Supreme Court would recognize a claim based on the alleged factual allegations under Article II, Section 4. Having considered the allegations in Count 1, 10, 11, 12, 13, and 14, the Court concludes that Plaintiff failed to state a claim under this section. Plaintiff thus failed to show that dismissal of these claims affected his substantial rights, or seriously affected the fairness, integrity, or public reputation of judicial proceedings.

### 2) Article 2, Section 10 claims

Plaintiff alleges in Counts 10 through 14 a violation of Article 2, Section 10 of the New Mexico Constitution. That section provides:

> The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures, and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the persons or things to be seized, nor without a written showing of probable cause, supported by oath or affirmation.

N.M. Const. Art. II, § 10. Here, Plaintiff failed to allege that he was seized: he did not allege he was arrested, subject to a search, or subject to criminal prosecution by Defendants Hickerson, Parker, Miles, or Posey. Nor has he shown that he may bring a claim for his son's alleged seizure under this section. But assuming *arguendo* he could, for the reasons discussed *infra* regarding his

due process claim, he failed to allege that Defendants Hickerson, Parker, Miles, or Posey were personally involved in or caused his son to be seized. Accordingly, Plaintiff has not established that dismissal of his NMCRA claims based on Article 2, Section 10 affected his substantial rights, or seriously affected the fairness, integrity, or public reputation of judicial proceedings.

### 3)  Article 2, Section 14 claims

Article II, Section 14 secures rights to, among other things, indictment by a grand jury or information, preliminary examination, present a criminal defense, counsel in a criminal prosecution, confrontation, and speedy trial. N.M. Const. Art. 2, § 14. Regarding Count 1, Plaintiff argues that during the DV petition hearing, he had no rights to confront witnesses or to present a defense against Defendant Hickerson. (Pl.'s Resp. 9, ECF No. 128). The rights at issue in Article 2, Section 14 pertain to criminal matters, not civil proceedings. The allegations do not show that Defendants Hickerson, Parker, Miles, or Posey instituted criminal proceedings against Plaintiff or interfered with any of the rights listed under Article 2, Section 14. Plaintiff thus cannot show that dismissal of these claims amounted to plain error.

### 4)  Article 2, Section 18 claims

Article II, Section 18 provides that no person shall be deprived of life, liberty, or property without due process of law or denied equal protection of the laws, and the equality of rights under law shall not be denied based on the sex of a person. N.M. Const. Art. 2, § 18. For the reasons discussed previously, Plaintiff has not stated an equal protection claim against Defendants in Counts 1, 10-14.[6]

---

[6] In Plaintiff's response to the motion to dismiss, he argued that he showed a plausible Article 2, Section 18 "claim that Hickerson showed preferential treatment to the child's mother out of sexual discrimination." (Pl.'s Resp. 9-10, ECF No. 128.) Plaintiff's amended complaint, however, does not assert an equal protection claim against Defendant Hickerson based on sex; instead, he asserts that Defendant Hickerson "gave preferential treatment to the child's mother over Plaintiff for no clear reason to do so." (Am. Comp. ¶ 8, ECF No. 42.) The Court finds that Plaintiff did not sufficiently allege in his amended complaint an equal protection claim based on the protected class of sex; instead, the amended complaint alleged a class-of-one equal protection claim.

A procedural due process claim requires that the plaintiff show he was deprived of a legitimate liberty or property interest and that he was not afforded adequate procedural protections connected to the deprivation. *Titus v. City of Albuquerque*, 2011-NMCA-038, ¶ 40, 149 N.M. 556. A "parent's legal relationship with his or her child cannot be severed without due process of law." *State ex rel. Children, Youth and Families Dept. v. Mafin M.*, 2003-NMSC-015, ¶ 18, 133 N.M. 827. Notice and hearing are required before a child is seized, even temporarily, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until afterwards, such as emergency circumstances that pose an immediate threat to the child's safety. *Roska*, 328 F.3d at 1245. To state a substantive due process claim brought under Article II, Section 18, the plaintiff must show that "government action shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Bounds v. State ex rel. D'Antonio*, 2013-NMSC-037, ¶ 50, 306 P.3d 457.

Regarding Plaintiff's due process claim against Defendant Hickerson in Count 1, Plaintiff argues in his response that Defendant Hickerson violated his right to due process by advising J.R. to file a restraining order for herself and her kids against Plaintiff, which she did, filing with her restraining order Defendant Hickerson's police report. (Pl.'s Resp. 6, ECF No. 128.) According to Plaintiff, Defendant Hickerson fabricated allegations in his report. (*Id.*) Defendants argue that Plaintiff failed to state a claim against Defendant Hickerson because he did not allege a deprivation of a life, liberty, or property interest. (Defs.' Mot. to Dismiss 8, ECF No. 114.) The Court agrees. As an initial matter, many of the facts Plaintiff relies upon are not in the Amended Complaint. But even if the Court considered Plaintiff's additional allegations, as set forth in his response, he could not succeed on a due process claim against Defendant Hickerson. According to Plaintiff, the DV petition was adjudicated and he "was ultimately exonerated of any wrongdoing." (Pl.'s Resp. 9,

ECF No. 128.) He thus failed to allege the necessary element of a deprivation of a life, liberty, or property interest to support his due process claim against Defendant Hickerson.

In Counts 10 and 11, Plaintiff alleges that Defendant Parker and his supervisors "illegally seized Plaintiff's child by fraud" on June 16 and June 21, 2022, using a "fraudulent and unsigned safety plan." (Am. Compl. 17, ¶¶ 141-42, ECF No. 42.) Defendants argue that, even "[a]ssuming arguendo that Plaintiff alleges a deprivation of his liberty interest in his relationship with N.L., … there was no seizure of N.L. by Defendant Parker which could implicate a deprivation of Plaintiff's due process or equal protection rights." (Defs.' Mot. to Dismiss 16-17, ECF No. 114). The Court agrees.

According to the amended complaint, Defendant Parker began an investigation of Plaintiff on or about May 10, 2022, concerning J.R.'s and J.R.'s father's allegations that Plaintiff had inappropriately touched J.R.'s daughter, a minor child, six to seven years ago. (Am. Compl. ¶¶ 125-30, ECF No. 42.) Plaintiff asserts that Defendant Parker "allowed CYFD unauthorized access into his investigation." (*Id.* ¶ 140.) Plaintiff alleges that his child was seized by RRPD on June 21, 2022, and that CYFD seized his child on June 16, 2022, by gunpoint, without a warrant or order. (*Id.* ¶¶ 136, 139, 141.) Plaintiff alleges that Defendant Parker's supervisor, Lead Detective Brittany Mahnesmith, was present during the seizures and she told other officers that she looked at Defendant Parker's report and "it had nothing in it about Plaintiff being investigated." (*Id.* ¶ 138.) According to Plaintiff, "Parker erred by conflating two investigations into one and the chaos that ensued led to Plaintiff's child being seized without warrant or order as his investigation left everyone in the dark." (*Id.* ¶ 136.) Plaintiff, however, also alleges that Defendant Parker was "out on COVID during the seizure of Plaintiff's child by RRPD on June 21, 2022," (*id.* ¶ 139), and he was "out for multiple weeks," (*id.* ¶ 141). Defendant Parker therefore had no personal involvement

in the seizure. That his report caused "confusion" or that he gave CYFD access to his investigation, which involved allegations of sexual abuse of a minor, is not enough to show he was personally involved in or directed the alleged seizure of Plaintiff's child. Nor do the allegations that he retroactively doctored his report the day after the seizure, on June 22, 2022, to avoid liability for the seizure, (*see id.* ¶¶ 139, 149-58), show that he committed or caused the alleged seizure of Plaintiff's child. Plaintiff therefore failed to state a due process claim under Article 2, Section 18 against Defendant Parker.

For similar reasons, Defendants argue that Plaintiff failed to state a due process claim against Defendant Miles. With respect to Defendant Miles, Plaintiff alleges that Defendant Parker assigned the case regarding the alleged inappropriate touching by Plaintiff to his partner, Defendant Miles. (*See id.* ¶¶ 157, 173.) According to the complaint, "Miles conspired with CYFD to illegally seize Plaintiff's child by gunpoint without any warrant, petition, or court order on June 16 and on June 21." (*Id.* ¶ 182.) However, the allegations indicate that Defendant Miles was not present during the alleged seizures of Plaintiff's child and there are no nonconclusory factual allegations suggesting that he directed or otherwise caused the purported seizures. Plaintiff therefore failed to state a due process claim under Article 2, Section 18 against Defendant Miles.

As for Defendant Posey, Plaintiff's amended complaint fails to allege facts necessary to state either a procedural or substantive due process claim against Defendant Posey.

Consequently, Plaintiff has not established that dismissal of his NMCRA claims based on Article 2, Section 18 affected his substantial rights, or seriously affected the fairness, integrity, or public reputation of judicial proceedings.

### c.  Plaintiff waived his objections to the PFRD.

With one exception, Plaintiff failed to establish any error in the PFRD. As to that one error, dismissal of those claims was appropriate on other grounds, so Plaintiff failed to show plain error. The interests of justice therefore do not weigh in favor of allowing an exception to the firm waiver rule. Accordingly, Plaintiff waived his objections to the PFRD.

**IT IS THEREFORE ORDERED** that Plaintiff's *Objections to the Magistrate's Proposed Findings and Recommended Disposition* (**ECF No. 175**) are deemed **WAIVED** based on untimeliness and a failure to show that an exception to the firm waiver rule applies.

**IT IS FURTHER ORDERED** that the Magistrate Judge's Proposed Findings and Recommended Disposition (**ECF No. 157**) is **ADOPTED in part and MODIFIED in part**, as explained herein. The Court **CONCURS fully** in the recommended dismissal of Counts 1 and 10-14.

**IT IS FURTHER ORDERED** that the *RRPD Defendants' Motion to Dismiss Counts 1, and 10 Through 14* (**ECF No. 114**) is **GRANTED** and **Counts 1 and 10-14 are therefore DISMISSED.**

_____
SENIOR UNITED STATES DISTRICT JUDGE