IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JARROD LOWREY,

Plaintiff,

v.                                                    Civ. No. 23-372 JCH/JFR

DAVID PORTIS et al.,

Defendants.

MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION[1]

THIS MATTER is before the Court on the *Motion for Summary Judgment Dismissing Counts 2-9* ("*Motion for Summary Judgment*") filed by Defendants David Portis, Phillip Gallegos, and Nick Army ("Defendants") on March 20, 2024.  Doc. 95.  The Court, having reviewed the *Motion for Summary Judgment*, the record, and the relevant law, recommends that it be **GRANTED**.  The Court further recommends that Plaintiff's remaining claims be **DISMISSED**.

## I.    RELEVANT PROCEDURAL BACKGROUND

As ordered by the Court, Doc. 40, Plaintiff filed his operative 'Amended Civil Rights Complaint' ("Complaint") on August 28, 2023.  *See generally* Doc. 42.  Therein, Plaintiff asserts fourteen counts against seven Rio Rancho Police Department ("RRPD") officers (collectively, "RRPD Defendants"[2]), each in their individual and official capacities, and one count against

---

[1] Pursuant to the referral order filed March 7, 2024, the Honorable Judith C. Herrera referred this matter to the undersigned to conduct hearings as warranted and to perform any legal analysis required to recommend an ultimate disposition of the case in accordance with 28 U.S.C. §§ 636(b)(1)(B), (b)(3), and *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990).  Doc. 92.

[2] To clarify, unless specified otherwise, the Court will use the term "RRPD Defendants" to refer to all seven officers named in this case and "Defendants," to refer to the three officers (i.e., Defendants David Portis, Phillip Gallegos, and Nick Army) against whom Plaintiff asserts Counts 2 through 9.

Sandoval County District Court Judge Cheryl H. Johnston, in her official capacity.[3]  *See id.* at 1.

In light of the Court granting *RRPD Defendants' Motion to Dismiss Counts 1, and 10 Through 14* (Doc. 114), the remaining claims are Counts 2 through 9.  *See* Docs. 157, 197, 203.  These eight counts allege that Defendants violated: the Fourth and Fourteenth Amendments of the U.S. Constitution, raised pursuant to 42 U.S.C. § 1983; the RRPD Standards and Procedures Manual; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; article II, sections 4, 10, 14, and 18 of the New Mexico Constitution, which the Court construes as being raised pursuant to the New Mexico Civil Rights Act, N.M. Stat. Ann. § 41-4A-1 to -13; article III, section 1 of the New Mexico Constitution; and the New Mexico Human Rights Act, N.M. Stat. Ann. § 28-1-1 to -15.  *See generally* Doc. 42 at 4-14 ¶¶ 11-120 (Counts 2 through 9).

Defendants filed the instant *Motion for Summary Judgment* on March 20, 2024.  Doc. 95; *see also* Doc. 113-1 (Exhibit 2, filed under seal with leave of the Court (Doc. 110)).  Rather than file a response, Plaintiff contends that he is not required to respond until he receives full discovery.  *See, e.g.*, Doc. 105; Doc. 120 at 6; Doc. 124; Doc. 144 at 6-10, 16-17; Doc. 172 at 2-3; Doc. 173 at 8-11, 17-19; Doc. 174 at 3-8; Doc. 187 at 2-3, 8-9; Doc. 188 at 2-6; Doc. 189 at 2-3; Doc. 199 at 21, 25-28, 32-35; Doc. 205.  The Court briefly sets forth its explanations as to why such arguments are incorrect.  *See, e.g.*, Docs. 141, 158, 196, 203.

First, Plaintiff filed a '*Rule 56(d) Motion for Dismissal of Summary Judgment Without Prejudice*' ("*Rule 56(d) Motion*") on April 3, 2024, seeking dismissal of the *Motion for Summary Judgment* without prejudice based on incomplete discovery.  Doc. 105.  RRPD Defendants responded on April 26, 2024.  Doc. 112.  Before the *Rule 56(d) Motion* was fully briefed, Plaintiff filed a *Rule 36(a)(6) and 37(a) Motion to Compel* ("*Motion to Compel*") on April 26,

---

[3] Judge Johnston has since been dismissed from this case, Doc. 54, ergo resolving Count 15, *see* Doc. 42 at 26.

2024.  Doc. 120; *see also* Doc. 121 ('Supplemental Exhibit List for Rule 36(a)6 and 37(a) Motion to Compel').  Then, on May 1, 2024, Plaintiff replied, Doc. 124, to RRPD Defendants' Response and filed a 'Notice Of Competition Of Briefing of Plaintiff's 56(d) Motion,' Doc. 125. With respect to the *Motion to Compel*, RRPD Defendants responded on May 10, 2024, Doc. 129, and Plaintiff filed both his Reply, Doc. 134, and a 'Completion of Briefing' notice, Doc. 135, on May 24, 2024.

The Court first denied Plaintiff's *Motion to Compel* on May 30, 2024, Doc. 136, and then denied Plaintiff's *Rule 56(d) Motion* on June 11, 2024, Doc. 141.  Notably, in the latter order, the Court explicitly instructed Plaintiff to respond to the *Motion for Summary Judgment* within fourteen days.  *Id.* at 7.  On June 28, 2024, the date that Plaintiff's response was due, Plaintiff filed a *Motion for Immediate Reconsideration of the Court's Denial of Plaintiff's Rule 37 Motion to Compel and Plaintiff's Corresponding Rule 56(d) Motion*, Doc. 144, which the Court denied on August 23, 2024, Doc. 158.  The Court again allowed Plaintiff to respond to the *Motion for Summary Judgment* within fourteen days.  *Id.* at 5.  On September 5, 2024, the day before Plaintiff's response was due, Plaintiff appealed.  Doc. 159; *see also* Docs. 160-62.  The Tenth Circuit Court of Appeals dismissed Plaintiff's appeal on October 9, 2025, due to the lack of appellate jurisdiction over non-final orders and decisions.  Doc. 168; *accord* 28 U.S.C. § 1291.

Defendants filed a 'Notice of Completion of Briefing' regarding the *Motion for Summary Judgment* on October 11, 2024.  Doc. 171.  In another attempt to forestall responding, Plaintiff filed a *Motion to Dismiss RRPD Counsel's Summary Judgment Motion and 12(C) Motion* ("*12(c) Motion*") on October 15, 2024.  Doc. 172.  That day, Plaintiff also filed objections to the undersigned's orders denying Plaintiff's *Motion to Compel* and *Rule 56(d) Motion*.  Docs. 173-74.  On October 29, 2024, RRPD Defendants responded, in three separate filings, to the two

aforementioned objections and Plaintiff's *12(c) Motion* on October 29, 2024.  Docs. 182-84. With respect to his *12(c) Motion*, Plaintiff filed both his Reply, Doc. 188, and a 'Notice of Completion of Briefing,' Doc. 190, on November 12, 2024.  As for his objections, Plaintiff filed a 'Notice of Completion of Briefing' for both filings on November 20, 2024.  Docs. 191-92.

Judge Herrera overruled Plaintiff's objections on January 30, 2025.  Doc. 196.  Of particular relevance, Judge Herrera required Plaintiff to respond to Defendants' *Motion for Summary Judgment* within fourteen days and explicitly warned Plaintiff that the Court would "not permit additional extensions of time to respond." *Id.* at 17.  On February 14, 2025, Defendants filed another 'Notice of Completion of Briefing' with respect to the *Motion for Summary Judgment*.  Doc. 198.  However, because Plaintiff receives filings by mail, Doc. 5, Plaintiff's response deadline was not until February 17, 2025. *See* FED. R. CIV. P. 6(a)(1)(A)-(C). The day after Plaintiff's response was due, he "objected" to Judge Herrera's order.  Doc. 199. RRPD Defendants responded in opposition on March 4, 2025.  Doc. 201.  The Court construed Plaintiff's "objections" as a motion to reconsider and denied it on May 7, 2025.  Doc. 203.

Although Plaintiff's response deadline had already lapsed when he filed his "objections," the Court construed the filing as a motion to reconsider and, because such motions typically stay deadlines, afforded Plaintiff the benefit of the doubt by presuming his response was due within fourteen days of the order denying reconsideration. *See* Doc. 204 at 1.  When Plaintiff again failed to file his response to the *Motion for Summary Judgment*, the Court entered an Order to Show Cause on June 2, 2025. *Id.*  Plaintiff responded to the Order to Show Cause on June 16, 2025, reasserting the same arguments and discovery concerns that have consumed nearly a third of the filings in this matter and have been repeatedly rejected by the Court.  Doc. 205.

4

## II.  **RELEVANT FACTUAL BACKGROUND**

The undisputed facts, construed in the light most favorable to Plaintiff, are as follows.

Plaintiff shares one minor child, N.L., with J.R.  On April 29, 2021, a joint custody order was

entered in the Thirteenth Judicial District Court (Case No. D-1329-DM-2020-00556), directing

Plaintiff and J.R. to exchange custody of N.L. at La Petite Academy on a pre-existing weekly

schedule.[4]  Doc. 95 at 3 ¶ 3; *see also* Doc. 95-2 (Domestic Relations Hearing Officer Report).[5]

On June 16, 2022, five days before the incident underpinning Counts 2 through 9, the Sandoval

County Sheriff's Office conducted a welfare check on N.L. at Plaintiff's home.  Doc. 95 at 3 ¶

4.  During this welfare check, Jennifer Bartleson, the assigned New Mexico Children, Youth, and

Families Department ("CYFD") caseworker, presented a safety plan (Doc. 113-1) prepared in

response to J.R.'s minor daughter (N.L.'s half-sister), A.R., accusing Plaintiff of sexual assault.

The safety plan temporarily granted full custody of N.L. to J.R. whilst CYFD investigated A.R.'s

allegation.  Doc. 95 at 3-4 ¶¶ 5-6.  Neither Plaintiff nor J.R. signed the safety plan at that time,

and only J.R. subsequently signed it.  *See* Doc. 95-1 at ¶ 11 (citing Doc. 113-1 at 2).  However,

Caseworker Bartleson subsequently told Defendants that Plaintiff initially agreed verbally, Docs.

95-1 at ¶ 13, 95-4 at ¶ 14, but Plaintiff told Defendants that he did not actually consent, and that

his consent was purportedly obtained under duress, Doc. 42 at ¶¶ 47, 85, 105, 117, through threat

---

[4] The only term materially changed by the joint custody order was the exchange location.  *See* Doc. 95-2 at 3-4.

[5] Defendants' citation parenthetical states that Doc. 95-2 "consist[s] of *Domestic Relations Hearing Officer Report*, filed March 30, 2021, at 3-4, and *Order Adopting Hearing Officer Report,* entered April 29, 2021."  Doc. 95 at 3 ¶ 3.  Defendant Gallegos' affidavit similarly references the custody order.  Doc. 95-1 at ¶¶ 4-5 ("A copy of the custody order shown to us at the scene is attached as Exhibit 1.  The custody order consists of the Domestic Relations Hearing Officer Report filed on Marcy [sic] 30, 2021 and the Order Adopting Hearing Officer Report entered on April 29, 2021.").  Upon closer inspection, however, the referenced exhibit only includes the 'Domestic Relations Hearing Officer Report' filed on March 30, 2021.  *See* Doc. 95-2.  Nevertheless, the Court may take judicial notice of the custody order, since it is part of the record of an official state court proceeding.  FED. R. EVID. 201; *St. Louis Baptist Temple v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[I]t has been held that federal courts . . . may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."); *see also Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

of physical harm, *id.* at ¶¶ 29, 67. Relatedly, Plaintiff claims that CYFD and Defendant Miles conspired to "seize his child on the [sic] June 16 by gunpoint," *id.* at ¶ 141, the same date the safety plan was presented to Plaintiff. *See id.* at ¶¶ 141, 182.

But the incident underlying Counts 2 through 9 did not occur until June 21, 2022, at La Petite Academy in Rio Rancho, New Mexico. *See generally* Doc. 42 at 4-14 ¶¶ 11-120. That day, Plaintiff arrived at approximately 4:00 p.m. to pick up N.L., as he typically would pursuant to the joint custody order and called the RRPD for a civil standby. *See id.* at ¶ 12. Defendant Gallegos and Officer Bencomo were dispatched to the scene and arrived at approximately 5:28 p.m. Docs. 95 at 4 ¶ 7, 95-1 at ¶ 2. At the scene already was Plaintiff, J.R., N.L., and Caseworker Bartleson. *See* Docs. 95 at 4 ¶ 10, 95-1 at ¶¶ 9, 11. Defendant Gallegos then called his superior, Defendant Portis, to the scene, Doc. 42 at ¶ 16, who arrived at approximately 6:35 p.m. Docs. 95-1 at ¶¶ 14-15, 95-4 at ¶¶ 4-5. Defendant Portis then called Defendant Army to the scene, who arrived at approximately 7:17 p.m., Doc. 95 at 4 ¶ 7.

Defendants were unsure of the enforceability of an unsigned CYFD safety plan that conflicted with the joint custody order. *See* Docs. 95-1 at ¶ 14, 95-4 at ¶ 18; *see also* Doc. 42 at ¶¶ 25, 55-56, 58, 62, 65-66, 71, 80-83, 96-98. Over the course of multiple hours, Defendants conferred not only with the parents (Plaintiff and J.R.), but also Caseworker Bartleson, who expressed her concerns over N.L. being at risk for sexual abuse, emotional abuse, being taken out of the state permanently, and/or being coached prior to his safe house interview. Doc. 95 at 4 ¶¶ 10-11; *see also* Doc. 42 at ¶¶ 37-38, 57, 74, 77, 104, 110, 112. Defendants concluded that Plaintiff likely originally agreed and subsequently changed his mind based on Caseworker Bartleson's input that she was present when Plaintiff orally agreed. Doc. 95-4 at ¶ 17.

Defendants conferred amongst themselves and with RRPD Detective Brittany Mahnesmith to determine how to proceed. *See* Doc. 42 at ¶¶ 33, 35, 37-38, 63-72, 94-98, 102, 110-114. At 8:30 p.m., Defendant Portis telephonically sought guidance from Judge Johnston, the judge who entered the joint custody order. *See* Docs. 42 at ¶¶ 232-40, 95 at 5 ¶ 12, 95-4 at ¶ 18. Defendant Portis understood Judge Johnston's guidance to mean that the CYFD safety plan took temporary precedence over the joint custody order and that Defendants should enforce the safety plan. *See* Docs. 95 at 5 ¶¶ 13-14, 95-4 at ¶ 19.

Defendants continued to discuss the situation with Plaintiff, J.R., and Caseworker Bartleson until approximately 9:30 p.m., when Defendant Portis decided that N.L. should remain with J.R. Doc. 95-1 at ¶ 18. At that point, J.R. departed with N.L. without incident. *Id.* When advised of this decision, Plaintiff also left the scene peacefully without incident. *Id.*; *see also* Doc. 95-4 at ¶ 23.

At no point during the course of this incident was Plaintiff arrested or detained. Docs. 95-1 at ¶ 20, 95-4 at ¶ 28. Nor were any criminal charges filed against Plaintiff. Doc. 95-1 at ¶ 22. Moreover, at no point did Defendants have physical custody over N.L., Docs. 95-1 at ¶ 19, 95-4 at ¶ 26, or deploy their service weapons, Docs. 95-1 at ¶ 21, 95-4 at ¶ 27.

### III. LEGAL STANDARDS

#### A. Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Only genuine disputes of material fact preclude the entry of summary judgment. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). "A fact is 'material' if, under the governing law, it could have an

effect on the outcome of the lawsuit.  A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (citation omitted); *see also Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016).

To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997).  "Instead, the movant only bears the initial burden of 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex*, 477 U.S. at 325) (citation modified); *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).  Once the movant meets this burden, the non-moving party is required to put in the record facts showing that there is a genuine issue for trial.  *Id.*  FED. R. CIV. P. 56(c)(1) requires both the movant and non-movant to "support the[ir] assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  *See also* D.N.M.LR-Civ. 56.1(b).  In other words, a party cannot rely upon conclusory allegations or contentions of counsel to obtain or defeat summary judgment, but rather, must produce some specific factual support of its claim.  *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988).  Likewise, "only statements made with actual knowledge will support a motion for summary judgment; the court must disregard statements of mere belief."  *West v. Norton*, 376 F. Supp. 2d 1105, 1118 (D.N.M. 2004) (citing *Tavery v. United States*, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994)).

When deciding a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable

inferences to be drawn from the evidence." *Kaus v. Standard Ins.*, 985 F. Supp. 1277, 1281 (D.

Kan. 1997) (citing *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir. 1986)).  The court is

not to weigh the evidence to determine the truth of the matter, but instead must ask "whether a

fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  "Where the record taken as a whole could not

lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"

*Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

Thus, "the mere existence of *some* alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no

*genuine* issue of material fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

## B.  Sua Sponte Dismissal for Failure to State a Claim

"Although dismissals under Rule 12(b)(6) typically follow a motion to dismiss, giving

plaintiff notice and opportunity to amend his complaint, a court may dismiss sua sponte 'when it

is "patently obvious" that the plaintiff could not prevail on the facts alleged, and allowing him an

opportunity to amend his complaint would be futile.'" *Hall v. Bellmon*, 935 F.2d 1106, 1109-10

(10th Cir. 1991) (citation omitted).  In deciding whether dismissal is warranted, the court accepts

the factual allegations in the complaint as true and views them in the light most favorable to the

plaintiff.  *Id.* at 1109.  In doing so, the court generally must exclude extraneous material or

convert the motion to one for summary judgment.  *Brokers' Choice of Am., Inc. v. NBC

Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017).  "A district court may, however, consider

documents attached to or referenced in the complaint if they are central to the plaintiff's claim

and the parties do not dispute the documents' authenticity."  *Id.* (citation modified).

While the facts in the complaint need not be detailed, they must sufficiently allow the court to draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 678 (2009); *see also* FED. R. CIV. P. (8)(a), (d) (listing requisites for pleading to state claim for relief). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [his] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Furthermore, pleadings offering "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (citation modified). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (citation modified). Indeed, "[c]onclusory allegations are not entitled to the assumption of truth." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (citation modified).

### C. <u>Plaintiff's Pro Se Status</u>

In addition to the aforementioned standards, *infra* Sections III.A-B, the Court notes that Plaintiff's filings were prepared without the assistance of counsel. Although Plaintiff must nevertheless comply with the fundamental rules of procedure, *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994), it has long been the rule that pro se pleadings are construed with a greater degree of liberality than those of a trained attorney, *Hall*, 935 F.2d at 1110 & n.3 (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). This rule requires the court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction. *Id.* at 1110. However, it is inappropriate for a court to assume the role of an advocate and read into a complaint for facts or legal theories that are simply not present there.

*Id.*; *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("[T]he court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues.").

The burden is on the plaintiff to frame a complaint that contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 663, 678 (quoting *Twombly*, 550 U.S. at 570). A court cannot assume facts or make connections on a pro se plaintiff's behalf because he "requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall*, 935 F.2d at 1110; *but see Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) ("Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend.") (citation modified). Similarly, a plaintiff's pro se status, in and of itself, does not prevent a court from granting summary judgment. *See, e.g.*, *Drake*, 927 F.2d at 1156.

## IV. <u>ANALYSIS</u>

The Court first addresses Defendants' *Motion for Summary Judgment* (Doc. 95), which only addresses Plaintiff's constitutional claims raised pursuant to 42 U.S.C. § 1983 in Counts 2 through 9. *See* Doc. 95 at 1. Despite being given multiple opportunities, *see, e.g.*, Docs. 141 at 7, 158 at 5, 196 at 14, 17, Plaintiff has entirely refused to respond to the *Motion for Summary Judgment*. Local Rule 7.1(b) states that a party's failure "to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M.LR-Civ. 7.1(b). However, a court may not grant a motion for summary judgment based solely on plaintiff's failure to respond and must consider the motion's merits.

*Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002). Although the Court remains cognizant of its duty to liberally construe Plaintiff's pleadings as a pro se litigant, *see Hall*, 935 F.2d at 1110, by failing to timely file a response, Plaintiff waived his right to controvert the facts asserted in the *Motion for Summary Judgment*, *see Reed*, 312 F.3d at 1194-95.

The Court then addresses the other legal bases Plaintiff lists under Counts 2 through 9, which the Court previously determined that such theories were legally invalid and/or factually insufficient, but only in connection with Counts 1 and 10 through 14. Doc. 157. The Court thus reapplies its prior reasoning to the extent applicable to Counts 2 through 9. *See infra* Section IV.B.

A. <u>**Summary Judgment for the Constitutional Claims Raised Under 42 U.S.C. § 1983**</u>

Material to all counts is 42 U.S.C. § 1983, the vehicle under which Plaintiff brings his constitutional claims. Doc. 42 at 4-6, 8, 12. Section 1983 is not a source of substantive rights, but rather, a vehicle for claims against any person acting under the color of state law who deprives another of rights, privileges, and/or immunities secured by the Constitution or federal laws. 42 U.S.C. § 1983; *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To prevail, a plaintiff must demonstrate: (1) the violation of a right secured by the U.S. Constitution or federal law; and (2) the alleged violation was committed by the person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

However, Defendants assert qualified immunity as to all claims against them. Doc. 95 at 1, 6-7; *see also* Doc. 46 at 9. Qualified immunity shields government officials from liability for civil damages arising from their performance of discretionary functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). When qualified

immunity is asserted, the burden shifts to the plaintiff to first overcome a "heavy two-part burden," *Phillips v. Jones*, 422 F.3d 1075, 1080 (10th Cir. 2005), of establishing that: (1) the defendant violated a constitutional or statutory right; and (2) the right was clearly established in a particularized sense, not at a high level of generality, at the time of the alleged violation. *Brosseau v. Haugen*, 543 U.S. 194, 199-200 (2004).  The latter prong is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right," *Mullenix v. Luna*, 577 U.S. 7, 11 (2015), which generally requires "[a] Supreme Court or Tenth Circuit decision on point or the weight of authority from other courts," *Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018).  "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment . . . ."  *Id.* at 1144 (citation modified).  In making its finding, the Court may address either prong first.[6]  *See Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

But as the Court previously noted, and still remains true, "Plaintiff does not address the qualified-immunity issue at all."  Doc. 158 at 5 (explaining why this failure was decisive in denying Plaintiff's *Rule 56(d) Motion*).  Plaintiff's failure to address qualified immunity is independently fatal to his presumed opposition of the *Motion for Summary Judgment*.  *See e.g.*, *Rojas v. Anderson*, 727 F.3d 1000, 1004-06 (10th Cir. 2013); *Smith v. McCord*, 707 F.3d 1161,

---

[6] Because "[t]he entitlement is an *immunity from suit* rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original), courts must "resolv[e] immunity questions at the earliest possible stage in litigation," *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).  However, the Court recognizes that Plaintiff's burden of fulfilling the first prong (i.e., showing that the alleged violation occurred) requires a factual inquiry.  Similarly, Plaintiff routinely argues that he cannot respond to Defendants' *Motion for Summary Judgment* because he has not received full discovery.  *See, e.g.*, Doc. 105; Doc. 120 at 6; Doc. 124; Doc. 144 at 6-10, 16-17; Doc. 172 at 2-3; Doc. 173 at 8-11, 17-19; Doc. 174 at 3-8; Doc. 187 at 2-3, 8-9; Doc. 188 at 2-6; Doc. 189 at 2-3; Doc. 199 at 21, 25-28, 32-35; Doc. 205.  But courts ordinarily stay or limit discovery to uncover only the facts necessary to decide the qualified immunity defense.  *Martin v. City of Albuquerque*, 219 F. Supp. 3d 1081, 1090-91 (D.N.M. 2015).  Accordingly, and as held in the Court's previous rulings, Docs. 141, 196, Plaintiff's argument fails because there is no additional discovery that could assist the Court in resolving a factual question in the *Motion for Summary Judgment*; the Court has lapel videos from the incident.  *See* Doc. 3 (Notice of Lodging).

1162 (10th Cir. 2013); *Pueblo Neighborhood Health Ctrs.*, 847 F.2d at 646.  Nevertheless, the

Court will examine each claim on the merits.

### 1.  <u>Fourth Amendment: Unreasonable Seizure (Count 4)</u>

In Count 4, Plaintiff alleges that Defendant Portis[7] violated the Fourth Amendment for

the "Unreasonable Seizure" of N.L., Plaintiff's "1st Liberty Interest," for twenty-one days,

without probable cause or due process by refusing to enforce the joint custody order and sending

N.L. home with J.R.  *See* Doc. 42 at 5 (heading), ¶¶ 41, 47-49.

The Fourth Amendment protects against "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const.

amend. IV.  However, a viable Fourth Amendment claim requires an *actual* seizure or restriction

of the claimant's *personal* liberty (i.e., his body or property), *see Brower v. Cnty. of Inyo*, 489

U.S. 593, 596-97 (1989); *see also United States v. Jones*, 565 U.S. 400, 406 (2012), resulting

from either physical force, however slight, or submission to an officer's show of authority,

*United States v. Salazar*, 609 F.3d 1059, 1064 (10th Cir. 2010).  Critically, the Fourth Amendment

does not protect abstract liberty interests like parental rights.  *Martinez v. Mafchir*, 35 F.3d 1486,

1490 (10th Cir. 1994) (distinguishing between abstract familial liberty interests protected by the

Fourteenth Amendment Due Process Clause and the personal liberty interests protected by the

Fourth Amendment); *J.B. v. Washington Cnty.*, 127 F.3d 919, 928 (10th Cir. 1997) (removing

child from home did not constitute a Fourth Amendment seizure of the parent).  Thus, the

question of when a seizure occurs is a question of law determined using an objective test:

---

[7] Plaintiff only lists a Fourth Amendment claim against Defendant Portis.  *Compare* Doc. 42 at 5 (heading for Count 4), *with id.* at 4-6, 8, 12 (headings for Counts 2 through 3 and 5 through 9).  Yet, in the substance of his pleadings, Plaintiff accuses Defendants Gallegos and Army of "unreasonably seiz[ing] Plaintiff's child without probable cause or due process."  *Id.* at ¶¶ 85, 117.  In any event, the undisputed facts foreclose a Fourth Amendment claim against Defendants Gallegos and Army just as they do against Defendant Portis.  *See supra* Section IV.A.1.

"whether a reasonable person would have felt free to leave or terminate the encounter." *United States v. Gaines*, 918 F.3d 793, 796 (10th Cir. 2019) (citing *Florida v. Bostick*, 501 U.S. 429, 436 (1991)). But "[e]ven if a reasonable person would not have felt free to leave, a seizure would occur only if the suspect yielded to a police officer's show of authority." *Id.* (citing *California v. Hodari D.*, 499 U.S. 621, 626-27 (1991)).

Measured against these standards, Plaintiff cannot show that a seizure of his personal liberties occurred. The undisputed material facts demonstrate that Defendants never applied physical force, demonstrated a show of authority, or otherwise prevented Plaintiff from leaving the daycare. Doc. 95 at 5 ¶¶ 15-18; *see also* Docs. 95-1 at ¶¶ 3, 18-22, 95-4 at ¶¶ 23, 25-28. Plaintiff thus fails to meet his burden for overcoming qualified immunity because without any restraint on Plaintiff's personal liberties, there can be no Fourth Amendment violation.[8] *See Brower*, 489 U.S. at 596-97; *see also Jones*, 565 U.S. at 406.

Plaintiff's failure to demonstrate the violation of a constitutional right axiomatically precludes any argument that Defendants' conduct violated a clearly established right. *See Siegert v. Gilley*, 500 U.S. 226, 232 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.").

---

[8] Instead, Plaintiff equates Defendant Portis' refusal to enforce the joint custody order in Plaintiff's favor as a "seizure" of Plaintiff's abstract liberty, which, as established, is not under the Fourth Amendment's purview, and thus not a clearly established right. *See, e.g., J.B.*, 127 F.3d at 928; *Martinez*, 35 F.3d at 1490. At most, a parent may bring a claim alleging violations of substantive or procedural due process under the Fourteenth Amendment. *See* Doc. 95 at 5 ¶¶ 14, 16; *see also Halley*, 902 F.3d at 1146 n.3 (pointing out similarities between requirements). Nevertheless, despite Plaintiff's characterization that Defendant Portis "seized" N.L., Doc. 42 at ¶¶ 20, 30, 41, 47, 48, 49; *see also id.* at ¶¶ 85, 117 (accusing Defendant Gallegos and Army of seizing N.L.), the undisputed material facts demonstrate that N.L. was never in Defendants' physical custody. Doc. 95 at 5 ¶¶ 14, 16.

In conclusion, Plaintiff fails to establish either requirement for demonstrating an actual constitutional injury, and thus fails to fulfill his heavy two-part burden for overcoming Defendants' affirmative defense of qualified immunity. *See Brosseau*, 543 U.S. at 199-200; *Phillips*, 422 F.3d at 1080. Accordingly, Defendant Portis is entitled to qualified immunity and summary judgment on Count 4, as it pertains to the Fourth Amendment claim of unreasonable seizure raised pursuant to 42 U.S.C. § 1983.

### 2.  Fourteenth Amendment: Equal Protection Violations (Count 2)

Count 2 alleges that Defendants Portis, Gallegos, and Army violated the Equal Protection Clause of the Fourteenth Amendment, U.S. Const. amend. XIV § 1, by previously enforcing the custody order for J.R., N.L.'s mother, on March 5, 2021, but refusing to enforce the custody order for Plaintiff, N.L.'s father, on June 21, 2022. Doc. 42 at ¶¶ 11-22. More specifically, Plaintiff contends that another RRPD officer previously enforced the custody order in J.R.'s favor on March 5, 2021, despite documentation alleging drug use in her household, but Defendants refused to enforce the same custody order for Plaintiff and instead prioritized the safety plan against him. *Id.* at ¶¶ 19-20.

The Fourteenth Amendment's Equal Protection Clause requires that "the state treat all those similarly situated similarly, with its central purpose being the prevention of official conduct discrimination on the basis of race or other suspect classifications. As such, equal protection only applies when the state treats two groups, or individuals, differently." *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004) (citation modified). "Equal protection jurisprudence has traditionally been concerned with governmental action that disproportionally burdens certain classes of citizens," but it also recognizes "class-of-one" claims where "a public official, with no conceivable basis for his action other than spite or some other improper motive (improper

because unrelated to his public duties), comes down hard on a hapless private citizen." *Kan.*
*Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215-16 (10th Cir. 2011) (citation modified).
Because Plaintiff does not purport to be a member of a protected class, the Court understands
him to proceed under the "class-of-one" theory. Accordingly, Plaintiff must show: (1) "that
others, 'similarly situated in every material respect' were [intentionally] treated differently;" and
(2) "this difference in treatment was [objectively] without rational basis, that is, the government
action was 'irrational and abusive,' and 'wholly unrelated to any legitimate state activity.'" *Id.* at
1216 (citations omitted).

Under the first element, the allegations necessary to establish the requisite level of
similarity will vary depending on the nature of the case, but "[t]he more variables involved in the
government action at issue, the more specifics the plaintiff will need to allege to allow for
meaningful comparison between the plaintiff's (negative) experience and the (positive)
experiences of others." *Haik v. Salt Lake City Corp.*, 567 F. App'x 621, 632 (10th Cir. 2014)
(unpublished). However, this is a difficult showing to make and "courts have imposed exacting
burdens on plaintiffs to demonstrate similarity in class-of-one cases" because "it is exceedingly
difficult to demonstrate that any difference in treatment is not attributable to a quirk of the
plaintiff or even to the fallibility of administrators whose inconsistency is as random as it is
inevitable . . . ." *Shifrin v. Toll*, 483 F. App'x 446, 449 (10th Cir. 2012) (citation modified).
Thus, to prevail, a plaintiff must demonstrate an extremely high degree of similarity between
himself and the person to whom he compares himself. *See id.*

Here, the undisputed facts demonstrate that Plaintiff and J.R. were not similarly situated
in all material respects. *See Ross v. Moffitt*, 417 U.S. 600, 609 (1974) ("'Equal protection' . . .
emphasizes disparity in treatment by a State between classes of individuals whose situations are

arguably indistinguishable."). Lack of distinction between individuals is "especially important in class-of-one cases," and it is absent here. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1213 (10th Cir. 2004). At the time of the June 21, 2022, incident, Plaintiff was subject to an ongoing CYFD investigation and temporary safety plan arising from the claim that Plaintiff had inappropriate sexual contact with A.R., N.L.'s half-sister. J.R. was not accused of having inappropriate sexual contact with a minor, so Plaintiff and J.R. were not similarly situated in all material respects.

Although Plaintiff tries to equate the CYFD safety plan with documents alleging meth use in J.R.'s home, which existed when a different RRPD officer enforced the custody order in favor of J.R. on March 5, 2021, these documents do not invoke the same implications. First, the safety plan directly addressed the custody terms. But even if such terms were lacking, as the District for New Mexico contemplated in *Payne v. Wilder*, allegations of one's drug use does not inherently equate an imminent peril of abuse because, even if true, one "might use methamphetamine when she did not have the children's custody, but might not comport herself in that fashion whilst having custody . . . ." No. CIV 16-0312, 2017 WL 3600454, at *50 (D.N.M. Aug. 18, 2017). In contrast, there were allegations that Plaintiff *directly* harmed N.L. *and* A.R. *See* Docs. 95-1 at ¶ 9, 113-1. Plaintiff offers no admissible evidence that Defendants enforced the mother's custodial rights under comparable circumstances and his conclusory allegations are insufficient to withstand summary judgment. *See Hall*, 935 F.2d at 1111.

Plaintiff's claim further falls short because he fails to fulfill the second element, which requires a litigant to show that the difference in treatment was "irrational and abusive," and "wholly unrelated to any legitimate state activity." *Kan. Penn Gaming*, 656 F.3d at 1216 (citation modified). In light of the Supreme Court's holding in *Engquist v. Or. Dep't of Agric.*,

553 U.S. 591 (2008), regarding the limits of equal protection claims built on a class-of-one

theory, at least one circuit court has enacted limits in the context of Plaintiff's claims: "In light of

*Engquist*, . . . we conclude that while a police officer's investigative decisions remain subject to

traditional class-based equal protection analysis, they may not be attacked in a class-of-one equal

protection claim." *Flowers v. City of Minneapolis*, 558 F.3d 794, 799-800 (8th Cir. 2009); *but

see Hanes v. Zurick*, 578 F.3d 491, 495 (7th Cir. 2009) ("*Engquist* does not support the . . .

argument that malicious police conduct is off-limits from class-of-one claims."). Whether the

same is true in the Tenth Circuit remains an open question. *See Planned Parenthood Ass'n of

Utah v. Herbert*, 828 F.3d 1245, 1255-57 (10th Cir. 2016); *Kan. Penn Gaming*, 656 F.3d at 1217

n.1 (declining to pass on the question whether "*Engquist* established a per se rule that *any*

discretionary decision is immune from class-of-one liability."). However, *Flowers* has been

cited approvingly at least once in this District, and its rationale suggests Plaintiff's claims based

on equal protection violations are without merit. *See Gygi v. City of Artesia*, No. 19-cv-00461,

2019 WL 5789290, at *6 (D.N.M. Nov. 6, 2019).

   Nevertheless, Defendants' conduct had a rational basis. Government action is presumed

constitutional under rational-basis review and will be upheld "if there is any reasonably

conceivable state of facts that could provide a rational basis for the classification." *Teigen v.

Renfrow*, 511 F.3d 1072, 1083 (10th Cir. 2007) (citation omitted). Here, Defendants reasonably

conferred with the individuals present at the scene, and "[b]ased on the statements of Lowrey and

Bartleson, [Defendants] concluded that Lowrey had agreed to the terms of CYFD safety plan on

June 16, 2022 but had changed his mind and wanted to go back to the schedule described in the

custody order." Doc. 95-4 at ¶ 17. Because the terms of the safety plan and joint custody order

conflicted, Defendants had to determine which document to enforce. Accordingly, Defendants

relied on Judge Johnston's guidance that "the more recent CYFD safety plan took temporary precedence over the court order and that we were to enforce the safety plan." *Id.* at ¶ 19. Such reliance provides a rational basis for the different treatment alleged. *See Teigen*, 511 F.3d at 1083.

Plaintiff's failure to establish an actual constitutional injury axiomatically precludes any argument that Defendants' conduct violated a clearly established right. *See Siegert*, 500 U.S. at 232. Accordingly, Plaintiff fails to fulfill either prong of his heavy two-part burden for overcoming Defendants' affirmative defense of qualified immunity. *See Brosseau*, 543 U.S. at 199-200; *Phillips*, 422 F.3d at 1080. Likewise, Defendants Portis, Gallegos, and Army are entitled to qualified immunity and summary judgment on Count 2, with respect to the Fourteenth Amendment Equal Protection Clause claim raised pursuant to 42 U.S.C. § 1983.

### 3. Fourteenth Amendment: Interference with Parent-Child Relationship (Counts 3, 6, and 8)

Plaintiff alleges that Defendants Portis (Count 3), Gallegos (Count 6), and Army (Count 8) violated his Fourteenth Amendment due process rights by declining to enforce the joint custody agreement on June 21, 2022, thereby infringing his liberty interest in the parent-child relationship. *See* Doc. 42 at 5, 8, 12. The Court notes that Plaintiff's Complaint potentially implicates both (1) the procedural due process right which attaches to the right to parental custody of a child, *see Stanley v. Illinois*, 405 U.S. 645, 651 (1972), and (2) the substantive right to familial association, *see Moore v. City of E. Cleveland*, 431 U.S. 494, 499 (1977).

### i. Procedural Due Process

Under the Fourteenth Amendment, parents have a protected liberty interest in "the care, custody and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). As a result, officials may not remove children from the home, even temporarily, without providing due

process of law through prior notice and a hearing. *Gomes v. Wood*, 451 F.3d 1122, 1128 (10th Cir. 2006) (citing *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982)). A parent's custodial right is not absolute, however. *Id.* Specifically, "state officials may remove a child from the home without prior notice and a hearing when they have a reasonable suspicion of an immediate threat to the safety of the child . . . ." *Id.* at 1130. In determining whether state officials have a reasonable suspicion of an immediate threat to the safety of the child, Courts must consider "*all relevant circumstances*, including the state's reasonableness in responding to a perceived danger, as well as the objective nature, likelihood, and immediacy of danger to the child." *Id.* at 1131 (emphasis in original). In such a consideration, the Tenth Circuit requires applying the reasonable suspicion standard, which "appropriately balances the interests of the parents, the child, and the state." *Id.* at 1130.

However, parental consent exempts the notice and hearing requirement. *Johnson v. Sanchez*, No. 21-cv-00184, 2023 WL 3996238, at *5-7 (D.N.M. June 14, 2023). One such example are CYFD safety plans. *See id.* at *5 (first citing *Dupuy v. Samuels*, 465 F.3d 757, 761 (7th Cir. 2006) ("Because [a] safety plan is voluntary, no hearing of any kind is necessary . . . ."); and then citing *Teets v. Cuyahoga Cnty.*, 460 F. App'x 498, 503 (6th Cir. 2012) (unpublished) ("[A] parent's voluntary consent to a safety plan obviates the need for any additional due process procedures on the part of [an] agency seeking to remove [a] child from a parent's custody.")).[9] Regardless of whether Plaintiff originally consented to the safety plan, the Court must first determine whether Plaintiff's conduct on June 21, 2022, was sufficient to terminate the CYFD safety plan. But Plaintiff fails to cite any case clearly establishing the existence of a

---

[9] Although these cases are from the Sixth and Seventh circuits, their rationale applies to New Mexico, which, like the jurisdictions addressed by the Sixth and Seventh Circuits, offers "safety plans" (also known as "in-home services") as an alternative to court-enforced removal proceedings. *Johnson*, 2023 WL 3996238, at *5.

constitutional requirement that each parent initially consents to a safety plan, nor a right of either parent to unilaterally terminate a safety plan. *See Johnson v. Sanchez*, No. 12-cv-00184, 2023 WL 3996238, at *9 (D.N.M. June 14, 2023) ("Plaintiffs do not cite to any case clearly establishing the existence of a constitutional right to detailed safety planning, nor a constitutional right of each parent to initially consent to a safety plan, nor of a right of either parent to unilaterally terminate a [CYFD] Safety Plan in a particular manner."); *see also Darla D. v. Grace R.*, 2016-NMCA-093, ¶ 42, 382 P.3d 1000, 1012 (approvingly discussing indeterminate safety plan).

The Court already established that Defendants did not seize N.L.  *Supra* Section IV.A.1. Thus, it is unclear what due process Plaintiff believes Defendants owed him.  In fact, RRPD officers lack authority to enforce custody orders aside from arresting a person who maliciously interferes with a custody order without good cause in violation of N.M. Stat. Ann. § 30-4-4. Doc. 95-4 at ¶ 8; *see also id.* at ¶ 24.  To the extent Plaintiff is arguing that Defendants impermissibly failed to arrest J.R., such a claim fails because there is no due process right (neither procedurally nor substantively) to have another person arrested.  *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005); *cf. Webb v. Caldwell*, 664 F. App'x 695, 696 (10th Cir. 2016) (no constitutional right to have action taken against person who threatened plaintiff).

In light of the underdeveloped law surrounding safety plans, and Plaintiff's failure to raise any clear statement of on-point authority, the Court concludes that Defendants could have not reasonably known that implementing this safety plan could have violated Plaintiff's procedural due process rights.[10]  *See Mullenix*, 577 U.S. at 11; *Halley*, 902 F.3d at 1144.  There is certainly no clearly established law that placed Defendants on notice that following the safety

---

[10] To clarify, the Court need not determine whether Plaintiff did or did not demonstrate a constitutional injury.

plan here would violate Plaintiff's rights. Accordingly, as noted immediately below, Defendants Portis, Gallegos, and Army are entitled to qualified immunity and summary judgment on Counts 3, 6, and 8, respectively, with respect to the Fourteenth Amendment procedural due process claims raised pursuant to 42 U.S.C. § 1983.

### ii.  Substantive Due Process

Children have a constitutionally protected liberty interest in a relationship with their parents, and vice versa. *Trujillo v. Bd. of Cnty. Comm'rs*, 768 F.2d 1186, 1189 (10th Cir. 1985). This familial right of association is a substantive due process right. *Halley*, 902 F.3d at 1153. The Tenth Circuit has recognized "two strands" of substantive due process: "One strand protects an individual's fundamental liberty interests, while the other protects against the exercise of governmental power that shocks the conscience." *Id.* (citing *Chavez v. Martinez*, 538 U.S. 760, 787 (2003) (Stevens, J., concurring in part and dissenting in part)); *but see Becker v. Kroll*, 494 F.3d 904, 922-23 (10th Cir. 2007) ("Our cases recognize a § 1983 claim for a violation of Fourteenth Amendment substantive due process rights in the narrowest of circumstances."). Here, the latter "strand" applies. *See Halley*, 902 F.3d at 1154 ("[W]e apply the fundamental-rights approach when the plaintiff challenges legislative action, and the shocks-the-conscience approach when the plaintiff seeks relief for tortious executive action.").

Accordingly, Plaintiff must demonstrate that Defendants' actions were arbitrary, egregious, or conscience-shocking, which, in familial association claims means demonstrating: (1) the government actor intended to deprive the plaintiff of his protected relationship; and (2) that the government actor either caused an undue burden or "unwarranted and severe intrusion" on the plaintiff's familial relationship. *Id.* at 1155; *Cordova v. City. of Albuquerque*, 816 F.3d 645, 654 (10th Cir. 2016) (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1196 (10th Cir. 2014))

(citation modified).  Determining whether an official unduly burdened the familial relationship requires balancing, "among other things, the severity of the infringement on the protected relationship, the need for defendants' conduct, and possible alternative courses of action." *Cordova*, 816 F.3d at 655 (quoting *Thomas*, 765 F.3d at 1196).

Here, Defendants did not physically remove N.L. from Plaintiff's custody.  *See supra* Section IV.A.1.  Nevertheless, the undisputed material facts demonstrate that Defendants rationally considered the totality of the circumstances, but ultimately determined that it was best for N.L. to go home with J.R., pursuant to the safety plan.  *See* Docs. 95-1 at ¶¶ 9-10, 12, 18, 95-4 at ¶¶ 13-24.  Defendants' discretion was thus supported by rationale, which inherently falls far short of conscience-shocking conduct.  *See Foley v. Connelie*, 435 U.S. 291, 297, 299 (1978) (explaining that matters involving children are one of the "most sensitive areas of daily" that an officer must respond to and requires "difficult and delicate judgments" underpinning the rationale for qualified immunity).  Although Defendants did not physically remove N.L. from Plaintiff's custody, *see supra* Section IV.A.1, any possible claim that Defendants infringed upon the familial rights of association, by not sending N.L. home with Plaintiff, was a minor disruption at most.  *See Lowrey v. Mosley*, No. 23-cv-372, 2024 WL 4349407, at *30 (D.N.M. Sept. 30, 2024) (finding week-long deprivation of child, "while [CYFD] investigated allegations against Lowrey," to be a minor deprivation not constituting a constitutional injury).

In conclusion, Plaintiff fails to demonstrate a violation of substantive due process as guaranteed by the Fourteenth Amendment.  *See Halley*, 902 F.3d at 1153-55; *Cordova*, 816 F.3d at 654.  Consequently, Plaintiff also cannot demonstrate a clearly established right, *see Siegert*, 500 U.S. at 232, and thus fails to fulfill either prong of the heavy two-part burden to overcome Defendants' affirmative defense of qualified immunity, *See Brosseau*, 543 U.S. at 199-200;

*Phillips*, 422 F.3d at 1080.  Therefore, Defendants Portis, Gallegos, and Army are respectively entitled to qualified immunity and summary judgment on Counts 3, 6, and 8, as they pertain to the Fourteenth Amendment substantive due process claims raised pursuant to 42 U.S.C. § 1983.

### 4.    Fourteenth Amendment: Fabrication of Evidence (Counts 5, 7, and 9)

Plaintiff alleges that Defendants Portis (Count 5), Gallegos (Count 7), and Army (Count 9) deliberately fabricated evidence in violation of the Fourteenth Amendment by virtue of statements made whilst Defendants deliberated on how to proceed, which purportedly show that Defendants changed their position about whether N.L. was in danger.  Doc. 42 at 4-8, 8, 12.

"To rise to the level of a constitutional violation, a plaintiff must assert a causal connection between the fabrication of evidence and the deprivation of liberty." *Truman v. Orem City*, 1 F.4th 1227, 1236 (10th Cir. 2021) (citing *Warnick v. Cooley*, 894 F.3d 746, 753 (10th Cir. 2018)).  To state a fabrication of evidence claim, a plaintiff must allege: (1) the defendant knowingly fabricated evidence; (2) the fabricated evidence was used against the plaintiff; and (3) the use of the fabricated evidence deprived the plaintiff of liberty.  *Id.*  Put more simply, the fabrication of evidence only violates due process when an officer deliberately falsifies evidence *and* the falsification is later used to deprive the plaintiff of his liberty.  *See Warnick v. Cooley*, 895 F.3d at 753; *see also Malik v. Arapahoe Cnty. Dep't of Soc. Servs.*, 191 F.3d 1306, 1315 (10th Cir. 1999) ("An ex parte hearing [to obtain custody order] based on misrepresentation and omission does not constitute notice and an opportunity to be heard.").

Even if one accepts as true that Defendants' statements contained errors or favored J.R., Plaintiff has not shown that the statements were presented to a court or resulted in any cognizable deprivation of liberty.  To the contrary, the Record clearly demonstrates that the purportedly false statements were never used in any proceeding depriving Plaintiff of his

personal liberty.  *See* Doc. 95 at 18.  At most, Plaintiff asserts that the purportedly false statements influenced his ongoing custody dispute, which is a matter of state family law outside the scope of 42 U.S.C. § 1983.  *See Lehman v. Lycoming Cnty. Child.'s Servs. Agency*, 458 U.S. 502, 512 (1982) (limiting federal courts' intervention in familial matters, including child custody disputes, to controversies showing a clear constitutional violation).

Thus, Plaintiff has failed to establish a constitutional injury.  Again, Plaintiff's failure to demonstrate the violation of a constitutional right axiomatically precludes any argument that Defendants' conduct violated a clearly established right.  *See Siegert*, 500 U.S. at 232.  As a result, Plaintiff fails to fulfill either prong of his heavy two-part burden for overcoming Defendants' affirmative defense of qualified immunity.  *See Brosseau*, 543 U.S. at 199-200; *Phillips*, 422 F.3d at 1080.  In conclusion, Defendants Portis, Gallegos, and Army are respectively entitled to qualified immunity and summary judgment on Counts 5, 7, and 9, with respect to the Fourth Amendment fabrication of evidence claim raise pursuant to 42 U.S.C. § 1983.

### B. <u>Plaintiff's Remaining Claims Fail to State a Valid Claim for Relief</u>

In addition to the constitutional claims Plaintiff raised under 42 U.S.C. § 1983, *see supra* Section IV.A, Plaintiff also claimed violations of: (1) the RRPD Standards and Procedures Manual (Counts 2 through 9); (2) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Count 2); (3) the New Mexico Human Rights Act, N.M. Stat. Ann. § 28-1-1 to -15 (Count 2); (4) article II, sections 4, 10, 14, and 18 of the New Mexico Constitution, pursuant to the New Mexico Civil Rights Act, N.M. Stat. Ann. §§ 41-4A-1 to -13 (Counts 2 through 9 (alleging varying sections in each count)); and (5) article III, section 1 of the New Mexico Constitution (Count 2).  As explained below, each of these remaining claims is subject to sua sponte dismissal

under FED. R. CIV. P. 12(b) for the absence of a cognizable basis, insufficient facts alleged, or jurisdiction. *See Hall*, 935 F.2d at 1110; *see also* FED. R. CIV. P. 8(a), (d) (listing pleading requirements). In making its recommendations under the 12(b) standard, the Court looks only to the Complaint. *Brokers' Choice of Am.*, 861 F.3d at 1103.

### 1. **RRPD Standards and Procedures Manual (Counts 2 Through 9)**

For each count at issue, Plaintiff claims that the alleged conduct violates the RRPD Standards and Procedures Manual ("RRPD Manual"). Doc. 42 at 4-6, 8, 12. Liberally construing Plaintiff's Complaint, Plaintiff appears to argue that the RRPD Manual creates enforceable rights that are either actionable independently and/or under 42 U.S.C. § 1983. *See id.* However, the RRPD Manual is an internal document that does not furnish Plaintiff with independent rights. *See* Docs. 95 at 16, 157 at 20. Similarly, the "violation of a police department regulation is insufficient for liability under section 1983." *Wilson v. Meeks*, 52 F.3d 1547, 1554 (10th Cir. 1995).

Therefore, each of Plaintiff's claims that Defendants violated the RRPD Manual fail as a matter of law and must be dismissed under FED. R. CIV. P. 12(b)(6). *See Hall*, 935 F.2d at 1110. Any amendment to the Complaint would be futile, because no amendment could overcome the fundamentally fatal flaw that the RRPD Manual is not a cognizable legal vehicle to assert claims. *See id.* at 1109-10. Accordingly, these claims must be dismissed with prejudice. *See id.*

### 2. **Civil Rights Act of 1964 (Title VII) (Count 2)**[11]

---

[11] The Court recognizes that Defendants discussed Title VII in their Motion for Summary Judgment. *See* Doc. 95 at 10. However, the overall goal of the *Motion for Summary Judgment* does not clearly request applying a summary judgment standard to Plaintiff's Title VII claim. *See id.* at 1 (moving "for summary judgment dismissing the 42 U.S.C. § 1983 claims asserted against them."); *but see Allen v. Denv. Pub. Sch. Bd.*, 928 F.2d 978, 982 (10th Cir. 1991) ("[S]ection 1983 cannot be used to assert the violation of rights created only by Title VII."). Moreover, the brief discussion on Plaintiff's Title VII claim suggests that a FED. R. CIV. P. 12(b) analysis is more appropriate. *See* Doc. 95 at 10 ("On its face, no facts have been pled in the Amended Complaint that describe a violation of Title VII . . . .").

The heading of Count 2 lists the 'Civil Rights Act of 1964 (Title VII).' Doc. 42 at 4. Title VII prohibits unlawful employment practices by "an employer." 42 U.S.C. § 2000e-2(a). An "employer" is "a person engaged in an industry affecting commerce who has fifteen or more employees," 42 U.S.C. § 2000e(b), and an "employee" is as "an individual employed by an employer," 42 U.S.C. § 2000e(f).

Plaintiff neither alleges that Defendants were employers, nor alleges that he was employed by Defendants. *Kelley v. City of Albuquerque*, 542 F.3d 802, 807-08 (10th Cir. 2008); *Riggs v. Cuna Mut. Ins.*, 42 F. App'x 334, 335 (10th Cir. 2002) (unpublished). Nevertheless, Plaintiff further fails to allege that he filed a charge of discrimination with the Equal Employment Opportunity Commission or received a right-to-sue letter, both of which are jurisdictional prerequisites to a Title VII action. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018).

In conclusion, Plaintiff's Title VII claim in Count 2 fails as a matter of law and must be dismissed sua sponte under FED. R. CIV. P. 12(b)(6). *See Hall*, 935 F.2d at 1110. Moreover, because Plaintiff was not an employee as defined under the statute, and no amendment could change this fact, futility exists. *See id.* at 1109-10. Accordingly, Plaintiff's Title VII claim must be dismissed with prejudice. *See id.*

### 3. <u>New Mexico Human Rights Act ("NMHRA") (Count 2)</u>

Plaintiff lists the NMHRA under Count 2. Doc. 42 at 4. The NMHRA prohibits unlawful discriminatory practices in the context of employment, housing, credit, and public accommodations. N.M. Stat. Ann. §§ 28-1-7(A)-(F), 28-1-10. To state a viable claim under the NMHRA, a plaintiff must allege facts showing that he: (1) falls within one of the statute's protected classes; (2) was subject to discrimination in one of the enumerated contexts; and (3)

exhausted administrative remedies before filing suit.  *See Tafoya v. Bobroff*, 865 F. Supp. 742,

747-48 (D.N.M. 1994) ("The New Mexico Supreme Court recently and unequivocally held that a

plaintiff under the [NMHRA] must exhaust his or her administrative remedies against each

defendant before he or she may sue the defendant in court.") (citing *Luboyeski v. Hill*, 1994-

NMSC-032, ¶ 7, 177 N.M. 380, 382, 872 P.2d 353, 355 (1994)).

 Plaintiff has not satisfied any of these elements.  He has not alleged that he was employed

by Defendants, that he sought housing or credit from them, or that he was denied access to a

place of public accommodation.  His claims arise entirely from a police response to a family

custody dispute—a circumstance wholly outside the NMHRA's scope.  Moreover, Plaintiff does

not claim that he exhausted the required administrative remedies, which is fatal in and of itself.

*See Luboyeski*, 1994-NMSC-032, ¶ 7.

 Accordingly, Plaintiff's NMHRA claim in Count 2 fails as a matter of law and must be

dismissed sua sponte under FED. R. CIV. P. 12(b)(6).  *See Hall*, 935 F.2d at 1110.  However, such

dismissal should be without prejudice because Plaintiff could, in theory, cure this claim by

exhausting his administrative remedies.  *See id.* at 1109-10 (discussing futility); *Kay*, 500 F.3d at

1217 (same).

### 4.  New Mexico Constitution (Counts 2 Through 9)

 In each count at issue, Plaintiff claims various violations of article II, the bill of rights, of

the New Mexico Constitution.  *See* Doc. 42 at 4-6, 8, 12.  Additionally, in Count 2, Plaintiff

claims that Defendants violated article III, section 1 of the New Mexico Constitution.  *Id.* at 4.

 However, the rights guaranteed under the New Mexico Constitution are not self-

executing because the relevant provisions do not supply the necessary rule by which the right

may be enjoyed and protected, or the means by which the duty imposed may be enforced.  *See*

*State v. Perrault*, 1929-NMSC-099, ¶ 6, 34 N.M. 438, 283 P. 902, 902-03 (1929). Thus, such claims may only be addressed via: (a) the New Mexico Tort Claims Act ("NMTCA"), N.M. Stat. Ann. §§ 41-4-1 to -27; or (b) the New Mexico Civil Rights Act ("NMCRA"), N.M. Stat. Ann. §§ 41-4A-1 to -13. *See Tucker v. Univ. of N.M. Bd. of Regents*, 618 F. Supp. 3d 1201, 1213 (D.N.M. 2022) (citing *Barreras v. N.M. Corrs. Dep't*, 2003-NMCA-027, ¶ 24, 133 N.M. 313, 319, 62 P.3d 770, 776 (recognizing that constitutional claims must proceed through available statutory schemes)). Because Plaintiff also invokes the NMCRA in each of his claims, the Court liberally construes his Complaint to mean that Plaintiff seeks to use the NMCRA as the vehicle to vindicate his purportedly violated state constitutional rights.

### i. Article II of the New Mexico Constitution Pursuant to the NMCRA

For each count at issue, Plaintiff raises section 4 of article II, which regards inherent rights, and section 18 of article II, which regards due process, equal protection, and sex discrimination. Doc. 42 at 4-6, 8, 12. In all but one count (Count 2) at issue, Plaintiff also raises section 14 of article II, which regards indictment and information, grand juries, and rights of accused. *Id.* at 5-6, 8, 12. Lastly, in Count 4, Plaintiff raises section 10 of article II, which regards searches and seizures. *Id.* at 5.

The NMCRA prohibits either a "public body or person acting on behalf of, under color of or within the course and scope of the authority of a public body" from depriving "any resident of New Mexico or person within the state . . . of any rights, privileges or immunities secured pursuant to the bill of rights [located in article II, sections 1-24,] of the constitution of New Mexico." N.M. Stat. Ann. § 41-4A-3(A). The statute explicitly requires that all claims brought pursuant the NMCRA be brought against a "public body," *id.* § 41-4A-3(B), which it defines as "a state or local government, an advisory board, a commission, an agency or an entity created by

the constitution of New Mexico or any branch of government that receives public funding, including political subdivisions, special tax districts, school districts and institutions of higher education," *id.* § 41-4A-2.

Fatal to Plaintiff's claims, however, is that all NMCRA claims must first be filed in New Mexico state court. *Way v. Hatch*, No. 23-cv-00223, 2025 WL 776608, at *5 (D.N.M. Mar. 11, 2025) (collecting cases). While less explicit than the text of the NMTCA, the other vehicle for vindicating state constitutional rights, the statutory text of the NMCRA does not appear to waive sovereign immunity in federal court. *See* N.M. Stat. Ann. § 41-4A-3(B) ("A [claimant] . . . may maintain an action . . . in any *New Mexico district court*.") (emphasis added); *id.* § 41-4A-10 ("[T]he waiver of sovereign immunity pursuant to Section 9 [41-4A-9 NMSA 1978] of that act shall not abrogate . . . any other constitutional, statutory or common law immunity.") (brackets in original).

Because plaintiff filed his NMCRA claims in federal court, as opposed to New Mexico state court, and the NMCRA does not clearly waive sovereign immunity in federal court, the Court lacks jurisdiction over Plaintiff's claims that Defendants violated Article II of the New Mexico Constitution. Accordingly, such claims must be dismissed without prejudice under FED. R. CIV. P. 12(b)(1). *See* 28 U.S.C. § 1367(c).

### ii. **Article III of the New Mexico Constitution**

Under the heading of Count 2, Plaintiff lists article III, section 1 of the New Mexico Constitution, Doc. 42 at 4 (heading of Count 2), which speaks to the state government's separation of powers, N.M. Const. art. III, § 1. But Plaintiff fails to explain how section 1 of article III applies to the present facts. Nevertheless, this claim is distinguishable from Plaintiff's other state constitutional claims because, as established, the NMCRA only pertains to article II,

31

the bill of rights, of the New Mexico Constitution.  *Supra* Section IV.B.4.i (citing N.M. Stat.

Ann. § 41-4A-3(A) (limiting claims to violations of the bill of rights, located in article II)).

      Because the NMCRA does not provide a vehicle for Article III claims, Plaintiff was

required to identify some other cognizable basis for relief.  Plaintiff failed to meet this burden,

and the Court will not make legal arguments on his behalf.  *Drake*, 927 F.2d 1159; *see also*

*Castro v. United States*, 540 U.S. 375, 386 (Scalia, J., concurring in part) ("'Liberal construction'

of *pro se* pleadings is merely an embellishment of the notice-pleading standard set forth in the

Federal Rules of Civil Procedure, and thus is consistent with the general principle of American

jurisprudence that 'the party who brings a suit is master to decide what law he will rely upon.'

Our adversary system is designed around the premise that the parties know what is best for them,

and are responsible for advancing the facts and arguments entitling them to relief.") (citation

modified).  In fact, there is no other mechanism for litigants to bring claims for constitutional

claims in New Mexico, aside from the NMTCA, which, like the NMCRA, is a vehicle for claims

of a violation of the *rights* secured by the state constitution.  *See* N.M. Stat. Ann. § 41-4-4(B)(2);

*Tucker*, 618 F. Supp. 3d at 1213; *cf. JL v. N.M. Dep't of Health*, 165 F. Supp. 3d 1048, 1061

(D.N.M. 2016) ("To seek redress through § 1983, the Supreme Court has held that a plaintiff

must assert a violation of a federal *right*, not merely a violation of federal law.") (emphasis in

original) (citing *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)).

      In conclusion, Plaintiff's claim under article III of the New Mexico Constitution fails as a

matter of law and must be dismissed sua sponte under FED. R. CIV. P. 12(b)(6).  *See Hall*, 935

F.2d at 1110.  In light of the fact that Plaintiff's other state law claims are being dismissed

without prejudice, the Court should not extend its supplemental jurisdiction here.  *See* 28 U.S.C.

§ 1367(c); *United Mine Workers of Am. v. Gibbs*, 383 U.S. at 715, 726 (1966).  Accordingly,

Plaintiff's claim under article III of the New Mexico Constitution should be dismissed without prejudice.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the undersigned hereby recommends that the presiding judge **GRANT** Defendants' *Motion for Summary Judgment Dismissing Counts 2-9* (Doc. 95), as it applies to Plaintiff's Fourth and Fourteenth Amendment claims raised pursuant to 42 U.S.C. § 1983.

The undersigned further recommends that the remaining claims be **DISMISSED** under FED. R. CIV. P. 12(b) because Plaintiff has either failed to state a claim upon which the Court has jurisdiction or state a claim upon relief can be granted. Specifically, the undersigned recommends Plaintiff's claims under the RRPD Standards and Procedures Manual and Title VII of the Civil Rights Act of 1964 be **DISMISSED WITH PREJUDICE** under FED. R. CIV. P. 12(b)(6). The undersigned further recommends that Plaintiff's claims under article II of the New Mexico Constitution (raised pursuant to the New Mexico Civil Rights Acts) be **DISMISSED WITHOUT PREJUDICE** under FED. R. CIV. P. 12(b)(1). Lastly, the undersigned recommends that Plaintiff's claims under article III of the New Mexico Constitution and the New Mexico Human Rights Act be **DISMISSED WITHOUT PREJUDICE** under FED. R. CIV. P. 12(b)(6).

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**